NORTHWESTERN TELEPHONE EXCHANGE COMPANY·*v*. E. B. AN-
DERSON, D. A. \DINNIE, F. W. SCHLABERG AND ANDREW
KNUDSON.

### Opinion filed February 8, 1904.

**Mover of Houses Liable for Damage to Telephone Lines.**

> 1. A person licensed to move houses in the city of Grand Forks
> is legally liable for damages done by him while moving a house,
> such damage being done to the wires and property of a telephone
> company, duly authorized by ordinance to establish a telephone system
> in said city and maintained therein.

**City Franchise to Telephone Company Creates a Vested Right, Not Impair-
able by Subsequent Private Grants.**

> 2. By the passage of such ordinance, which gave the city benefits,
> and its acceptance by the company, and its expenditures thereunder,
> a contractual relation was created between the company and the city,
> which became a vested right that could not be impaired by subsequent
> action of the city directly or indirectly annulling it for purposes not
> public and for purposes of a personal or private nature.

**Removal of Buildings Is an Extraordinary Use of Streets, Subject to Public
and Vested Rights.**

> 3. The use of a street for moving houses is an extraordinary use
> thereof. Such use may be permitted, but not so as to destroy the use
> of the street for travel or necessary public purposes, and cannot be
> legally done in destruction or impairment of vested rights.

Appeal from District Court, Grand Forks county; *Fisk,* J.

Action by the Northwestern Telephone Exchange Company
against E. B. Anderson and others. Judgment for plaintiff. De-
fendants appeal.

Affirmed.

*Guy C. H. Corliss,* for appellants.

The city authorities cannot bargain away the public right to the
use of streets; the power of such streets is vested in the govern-
ing body of the city as a trust for the general public.· *Commission-
ers* v. *Street,* 22 So. Rep. 629; *Hibbard* v. *City of Chicago,* 50 N. E.
Rep. 256; *Snyder* v. *City of Mt. Pulaski,* 52 N. E. Rep. 62.

If plaintiff has contract rights, it took them subject to the authority
of the city to allow the removal of buildings over the streets thereof.

The party removing a building is not liable for a tort; if there is any liability, such liability exists on the part of the city.

The plaintiff took its franchise "subject to all reasonable regulations and ordinances of a public nature as the city council may authorize or see proper at any time to adopt, not destructive of the rights herein granted." The removal of buildings is a reasonable use of the streets of a city.

*Tracy R. Bangs,* for respondents.

The unanimous opinion of courts of last resort is, that the acceptance of the terms and conditions of an ordinance granting to a telephone company the use of the streets and alleys of a city, constitutes a contract between it and the city, and the construction of its line, at large expense, vests in such company certain inviolable rights. *The Northwestern Tel. Ex. Co.* v. *City of Minneapolis,* 83 N. W. Rep. 527, 53 L. R. A. 175; *City of New Orleans* v. *Gt. So. Telephone and Tel. Co.,* 8 Am. St. Rep. 502; *Michigan Tel. Co.* v. *St. Joseph,* 80 N. W. Rep. 383, 47 L. R. A. 87, 80 Am. St. Rep. 520.

The purpose of public streets is to provide the public with means to travel from place to place, on foot and in vehicles of all description, to transmit intelligence by letter, or other contrivance, as by telegraph or telephone, to transmit gas, water and sewage for the use of the public, etc. *Taylor* v. *Portsmouth, etc., St. Ry. Co.,* 64 Am. St. Rep. 216.

There is no common law right to move a house along the streets of a city; it is an extraordinary use for which the municipality may exact a license. 24 Am. & Eng. Enc. of L. (1st Ed.) 119.

The plaintiff's rights with the city are contractual; and the latter can grant no privilege to any private person for any private enterprise that interferes with the plaintiff's rights under its franchise. The grant of a right to remove a building is an unusual and extraordinary use, as a matter of favor to individuals, in which the public has no interest. The right of the defendant, Anderson, to remove the building is subject to all of plaintiff's rights under its contract. *Day* v. *Green,* 4 Cush. 433; *Dickson* v. *Kewanec Electric Light and Motor Co.,* 53 Ill. App. 379; *N. Y. and N. J. Tel. Co.* v. *Dexheimer,* 14 N. J. Law, 295; *Penn. Tel. Co.* v. *Varnan,* 15 Atl. Rep. 624; *Williams* v. *Citizens' Ry. Co.,* 130 Ind. 71, 29 N. E. Rep. 408, 15 L. R. A. 63, 30 Am. St. Rep. 201; *City of Eureka* v. *Wilson,* 48 Pac. Rep. 41.

MORGAN, J.   This action is brought to recover damages alleged to have been caused to plaintiff's property by the defendants while moving a house through and upon the streets of the city of Grand Forks. The complaint alleges the incorporation of the plaintiff company under the laws of the state of Minnesota, doing business as a telephone company in said state and in the state of North Dakota by legal authority; that in August, 1890, the city of Grand Forks, under statutory authority, passed an ordinance, which was duly approved by the mayor, and published as provided by law, granting the plaintiff company a franchise to erect telephone poles in the streets and alleys of said city, to place wires and crossbars thereon, and to do the same for the purpose of supplying said city and its citizens the benefits to be derived from communication by telephone between themselves; that such ordinance provided that it should take effect in ten days after the acceptance by the plaintiff of certain conditions and restrictions imposed by the ordinance upon said telephone company. Among such conditions, and as a consideration for granting such franchise, was one to the effect that such telephone poles were to be placed at such places, and the wires stretched across or along said streets at such height, as directed by the city engineer and approved by the city council. A further condition to and consideration for the granting of such franchise was that said company should allow said poles to become a city instrumentality for attaching thereon, at the upper arm thereof, the city's fire alarm or police wires, and that said city should have the use of one telephone free of charge, and such others as it desired for its business at 75 per cent of the usual price charged therefor. Said company unconditionally accepted all the conditions imposed by such ordinance by an acceptance thereof in writing, duly filed in the city clerk's office. The complaint further alleges that the plaintiff, upon its acceptance of the conditions imposed by the ordinance, established a telephone system in said city at a large expense, and has ever since maintained the same as a local telephone system and as a long distance system, with facilities for communication between said city and other cities in North Dakota and in Minnesota, South Dakota, Wisconsin, and Iowa; that in April, 1900, the defendant Anderson notified the plaintiff that he intended to move a building known as the "Arlington Hotel" through and along some of the streets of said city, naming them, and notified the plaintiff to give its wires the required attention in

view of such moving. The plaintiff thereupon commenced an action against said defendant, and procured from the district court of Grand Forks county a preliminary injunction against the moving of said building as an interference with its property rights, as such moving would injure its property by breaking its wires; that upon the service of such injunctional order, summons, and complaint the defendant appeared in said action, and moved that such injunctional order be set aside. The court made an order denying such motion unless the defendant Anderson would furnish a bond indemnifying the plaintiff against all damages incurred by it by reason of the moving of said building by destruction of its property. The bond was furnished and the building moved. This action is brought on the bond. Damages are alleged at $207.95. The answer alleges that the defendant rightfully moved such building under legal authority granted to him by virtue of a permit to move said building, issued to him pursuant to a valid ordinance of said city, authorizing the building inspector of said city to issue such permits to persons entitled thereto, as the defendant was as a duly licensed "house mover"; and that he gave to the city a bond, as provided by its ordinances, indemnifying the said city against any liability incurred by it by reason of damages incurred by it on account of moving of houses by him pursuant to such permit. The case came to trial before a jury upon admitted facts. The trial court directed a verdict for the plaintiff. Judgment was entered pursuant to such verdict, and defendants excepted thereto. The defendants appeal from such judgment.

The only error assigned is that the court erred in directing a verdict for the plaintiff. Two questions only are involved in this appeal: (1) Plaintiff's right under the ordinance granting it a franchise to establish and maintain a telephone system within said city; (2) defendant Anderson's rights, under the permit issued to him to move said building, based on the ordinances of said city. The plaintiff claims that by its acceptance of the conditions of the ordinance granting the right to establish a telephone system in said city, and its expenditure of large sums of money in establishing and maintaining such system, a contract was entered into with said city under such ordinance, and vested in said company inviolable rights, which it cannot be deprived of by the use of said streets in matters of a private nature not included in the lawful use of said streets for traveling purposes by the public, and that the use of

said streets for house moving purposes is not a use of them for traveling purposes, and not the primary or usual use of them. On the part of the defendant it is claimed that Anderson, having been licensed, and by special permit authorized to move the building, his acts in doing so were rightful and legal, and 'that the city had no power to grant plaintiff privileges that would bargain away defendants' right to move buildings along the streets, as said business is a lawful, necessary and usual use of the city's streets. The city council of Grand Forks is authorized under its charter "to lay out, establish, open, alter, widen, grade, pave or otherwise improve streets, alleys, avenues, * * * and vacate the same, * * * and to regulate the use of the same." Comp. Laws, subds. 7, 9, section 885. Subdivision 10 of said section provides that it may prevent and remove obstructions and encroachments upon its streets. Subdivision 17 of said section 885 authorizes the city council "to regulate and prevent the use of streets, sidewalks and public grounds for signs, sign posts, awnings, telegraph or telephone poles," etc. A telephone system is classed as a public use, and to further its establishment the right of eminent domain may be exercised. Section 5956, subd. 7, Rev. Codes 1899. The sections above referred to confer upon the city the power to pass the ordinance under which the plaintiff company was granted the franchise under which it established and maintains its telephone system in said city. The city council's authority to pass such ordinance as one of its granted powers is not contested in this case. It is claimed, however, that it could not, by so doing, impose any burdens upon the defendant Anderson in properly exercising his license to use the streets in his business of moving houses. In *Donovan* v. *Allert,* 11 N. D. 289, 91 N. W. 441, 58 L. R. A. 775, this court held that city councils may authorize the use of the streets for appliances necessary to the maintenance of telephone systems, but that, having done so, abutting owners are not thereby deprived of the right to compensation therefor as owners of the fee to the streets. The city council having, under such statutory authority, granted plaintiff the right to use the streets of the city for this purpose under an ordinance with proper restrictions upon the exercise of the right so that travel shall not be interfered with, the question remains for answer, what are plaintiff's rights so far as this litigation is concerned? Was the right granted a naked permission to set poles and string wires on the streets, or was it accompanied by protection

from. damages by reason of other uses of the streets permitted by the council for private purposes? The city receives pecuniary benefit from the plaintiff in the free use of plaintiff's property. This was exacted as a condition precedent to the ordinance becoming operative. The conditions imposed on the plaintiff before the streets should be used by it were accepted. The plaintiff company applied for the franchise. The city granted this privilege upon terms imposed as a consideration. The plaintiff accepted the franchise with the conditions imposed. It has thereafter expended large sums in carrying into effect its acceptance of the ordinance with its conditions. A contract was thereby, in effect, entered into between the two corporations. The contract cannot now be impaired by the city in granting to persons the use of the streets for private purposes. "So an ordinance authorizing a telephone company to maintain lines on its streets, without limitation as to time, for a stipulated consideration, when accepted and acted upon by the grantee by a compliance with its conditions, becomes a contract which the city cannot abolish or alter without consent of the grantees." *Rutland Co.* v. *Marble City Co.,* 65 Vt. 377, 26 Atl. 635, 20 L. R. A. 821, 36 Am. St. Rep. 868. "Certainly, after the expenditure in 'the erection of poles, made in reliance upon the municipal designation, the company obtains a vested right, of which they cannot be stripped by a subsequent revocation of such designation." *Hudson Tele. Co.* v. *Jersey City,* 49 N. J. Law, 304, 8 Atl. 124, 60 Am. Rep. 619. "Obviously, upon the clearest considerations of law and justice, the grant of authority to defendant, when accepted and acted upon, became an irrevocable contract, and the city is powerless to set it aside, or to interpolate new and more onerous conditions therein. Such has been the well recognized doctrine of the authorities since the Dartmouth College case, 4 Wheat. 518, 4 L. Ed. 629." *City of New Orleans* v. *Gt. So. Tele. Co.* (La.) 3 South. 533, 8 Am. St. Rep. 502. "When the construction company and the complainant accepted the privileges granted to them by the laws of the state, and the municipality had duly given its permission, and the corporations had expended their money in valuable improvements, contracts were entered into which neither the state nor the municipality could impair or destroy in the absence of power to do so being reserved in the grant itself, or in the Constitution, which becomes a part of such contracts." *Mich. Tel. Co.* v. *St. Joseph* (Mich.) 80 N. W. 383, 47 L. R. A. 87, 80

Am. St. Rep. 520; See, also, *N. W. Tel. Ex. Co.* v. *Minneapolis* (Minn.) 83 N. W. 527, 53 L. R. A. 175; *City of St. Louis* v. *Western Union Tel. Co.* (C. C.) 63 Fed. 68; *Meyers* v. *Hudson County Elec. Co.,* 60 N. J. Law, 350, 37 Atl. 618; *City* v. *Tel. & Tel. Co.,* 40 La. Ann. 41, 3 South. 533, 8 Am. St. Rep. 502; *Knoxville* v. *Africa,* 77 Fed. 501, 23 C. C. A. 252. It is true that the ordinance under which the plaintiff is maintaining this system was not repealed, but the effect of granting defendant the right to move the building was destructive of plaintiff's property, and therefore a violation of plaintiff's contractual rights under the ordinance. Whether such contractual rights could be relied on in case of changes in the location of poles or damages done to them demanded by a necessary and usual use of the streets by the city, is not here presented. Whether the use of the streets in moving houses is inconsistent with plaintiff's use of the streets under the ordinance, or impairs its right to use such streets, is the only question passed on here.

The city gave the defendant permission to move the building in question. The defendant was licensed to move houses in said city. The license was granted only on condition that he give a bond to indemnify the city against any loss occasioned by the defendant in that business to property, public or private. A license fee of $25 was also exacted as a condition to the granting of such license, and paid by defendant. By granting the license under the ordinance, the council acted under the statutory power given it to regulate the use of the streets. That the council can rightfully do so under restrictions is undoubtedly true. It is not an absolute right that any one can demand, but the power is to be exercised or not, as a matter of discretion. *Woodward* v. *Boston,* 115 Mass, 81; *Eureka City* v. *Wilson,* 15 Utah 53, 48 Pac. 150, 62 Am. St. Rep. 904. The use of the streets for moving houses is not, however, a usual, but is rather an extraordinary, one. It does not pertain to the primary right to the use of the streets for travel or other public purposes. The public derives no benefit therefrom generally. Such extraordinary use of a street may, however, be permitted as a favor, under restrictions safeguarding the rights of the public to the street in certain cases, as necessity may require. In *Millville Traction Co.* v. *Goodwin,* 53 N. J. Eq. 448, 32 Atl. 263, the court said: "Because of the privilege thus secured to it by the law and the action of the city authorities, the company has invested

its money, and they thereby perfected obligations which the Constitution says shall not be impaired. The defendants propose to occupy the highway not for the purpose of ordinary travel or communication, but for the purpose of moving a very large frame building, to do which nearly the entire street is occupied. This, it must be admitted, is an obstruction of the street. It certainly interferes more or less with ordinary travel, but the question is not whether or not they may so occupy the street in case by doing so they do not become a nuisance to others who desire and have a lawful right to use the streets for the purposes for which they are established, but the question is whether or not they have a right, in using the street, to prevent the company from the full, free and complete exercise of the franchises with which it is clothed. I think the statement of the question brings with it the correct answer. While all persons ordinarily have a right to use the street to the same extent with the car company, yet they have no right unduly or unreasonably to occupy the street, and so to prevent the passage of trains." In that case the defendant had no license or permit to move the house. Hence the case is in point only in principle in this case. In *N. Y. & N. J. Telegraph Co.* v. *Dexheimer*, 14 N J. Law J. 295, the defendant was a licensed housemover, and in moving a house cut the wires of the company's system. Suit was brought for damages, and the jury was charged that the defendant was liable if he cut any wires that were put up and maintained in accordance with the city ordinance under which they were put up, and ordered damages assessed in plaintiff's favor for such as were thus maintained and were cut, and these only. In *Williams* v. *Citizens' Ry. Co.*, 130 Ind. 71, 29 N. E. 408, 15 L. R. A. 64, 30 Am. St. Rep. 201, the court said: "Where a right to use a street is acquired pursuant to statute and under a license from a municipality, it is in the nature of a contract right, and the municipality itself cannot destroy or materially impair it. * * * It is undoubtedly true that all such rights are subordinate to the paramount power, usually denominated the 'police power,' for that power cannot be annihilated by contract. * * * It would violate the plainest principles of law to permit an individual citizen to confiscate or destroy the property of a corporation which has assumed to exercise rights under the laws of the state, and to which the officers of the government have given recognition by granting it the right to use the streets of a city. * * *

The appellants in this case are not asking to be allowed to make an ordinary use of the streets of the city. They are, on the contrary, asking that they be permitted to use the streets in an extraordinary mode, and for an unusual purpose. * * * It would be strange, indeed, if large buildings could be moved along the thronged streets of a city without control or restriction, and it would be equally strange if the owner of a building could destroy the property of others in order to enable him to move his building from one place to another." In *Dickson* v. *Kewaunee Electric L. and M. Co.,* 53 Ill. App. 379, the jury were instructed "that the company had a right to place its wires in the street, if allowed by corporate authority, if it did not interfere with the ordinary use of the public in the streets, and that removing a house along the streets was not within the rights enjoyable by the public as a use of the public streets." This instruction was sustained in the appellate court. See, also, *Penn. Tel. Co.* v. *Varnau* (Pa.) 15 Atl. 624; *Day* v. *Green,* 4 Cush. 433; *Graves* v. *Shattuck,* 35 N. H. 257, 69 Am. Dec. 536; *Townsend* v. *Epstein* (Md.) 49 Atl. 629, 52 L. R. A. 409, 86 Am. St. Rep. 441.

The evidence shows that the wires were stretched and the poles placed in compliance with the ordinance under the supervision of the city officers. The building which was moved was a large building, and forty-three feet high when being moved, and seven feet higher than the highest of plaintiff's telephone wires, as placed pursuant to such ordinance. Our conclusion is that the defendant's rights to the street for house-moving purposes were subordinate to those of the plaintiff; that plaintiff was given paramount rights to the streets by virtue of the ordinance containing no provision for direct or indirect revocation for private purposes; that defendant was a mere licensee, with privileges to use the streets in a manner not unreasonably interfering with the use of the streets for traveling purposes, and without interference with those having prior rights to them under ordinances that have ripened into relations in the nature of contracts, thereby becoming vested rights; that the use of the streets by defendant for such purposes was not an ordinary, but an exceptional and extraordinary, use thereof, out of which the public as such derives no benefit; that neither the defendant's license nor the special permit to move this building did or could protect him from liability for damages to plaintiff arising out of the exercise of the permission given him to move this building. The

council did not, and would have no power to, grant a license to move the building, and give therewith immunity from damages consequent upon the exercise of the license. Such permission can only be given by the council for the use of the street for such purpose; that is, for moving the building. To add to such permission expressly or in effect a provision that the exercise of the permission would leave those damaged thereby without remedy against the defendant, would be a void, unreasonable, and inoperative provision. Its effect would be to impair and nullify the previous grant to the plaintiff, under which vested rights ripened. To compel plaintiff to remove its wires or repair them whenever called upon to do so by persons moving houses would add a burdensome and unreasonable condition to the ordinance under which it acts, not contemplated by its terms as passed. So far as the plaintiff is concerned, and its property rights, defendant was a trespasser, acting without any legal authority. Appellants' contention is that plaintiff accepted the terms of the ordinance with knowledge that the council possessed the power to authorize the moving of buildings, and possessed such power as a trust which could not be impaired. This would be true of any usual use of the streets, or for traveling purposes, or necessities arising in the interests of the public. So far as purely private interests are concerned, the plaintiff's rights cannot be jeopardized by imposing new and unreasonable conditions. We think it more reasonable to say that the plaintiff accepted the ordinance under a presumption, which it had a right to indulge in, that its rights were paramount so far as extraordinary uses of the streets were concerned, and only subject to impairment by the usual and necessary use of the streets, or when public necessities demand it.

The defendants are legally liable for the damages incurred, and the judgment will be affirmed. All concur.

COCHRANE, J., having been of counsel in the court below, took no part in the decision, Judge W. J. KNEESHAW, of the Seventh Judicial District, sitting in his place by request.