FORT MADISON STREET RAILWAY COMPANY v. HENRY HUGHES, THOMAS DODSON and FRANK DODSON, Appellants.

Street railways: INTERFERENCE WITH SAME: MOVING OF BUILDINGS.
1 Where a street railway company has lawfully acquired the right to occupy the streets of a city, the right to operate its lines cannot be interfered with, its franchise impaired or property destroyed, for the purpose of enabling another to use the street in moving buildings.

Same: INJUNCTION: RECOVERY UPON BOND. To recover on an in-
2 junction bond, in an action restraining interference with a street car line by the moving of buildings, it must be shown that there was no threat to tear down the companies overhead construction.

Adjudication. There is no adjudication of issues involved in a pe-
3 tition which is dismissed without prejudice before final submission of the case.

*Appeal from Lee District Court.*— HON. HENRY BANK, JR., Judge.

WEDNESDAY, DECEMBER 11, 1907.

REHEARING DENIED, MONDAY, JANUARY 20, 1908.

THE defendants Thomas and Frank Dodson are house movers, and had contracted with the defendant Hughes to move a certain house described as sixteen and a half feet wide by thirty feet long and twenty-one feet high, from a point in the western limits of Ft. Madison to the north side of Santa Fé avenue between Hanover street and Van Valkenburg avenue, and had loaded it on timbers thirty feet long resting on wagons, and had reached a point opposite Ivanhoe Park, and contemplated proceeding with it along Santa Fé avenue, a distance of about one and one-fourth miles. The Ft. Madison Street Railway Company operated a street railway along this avenue, and its wires were so strung that the house could not be taken further without their removal, and the defendants notified the company that they were about to move the house over its track, and that it was of such dimensions that " all stay, trolley, and other wires of your company will interfere and obstruct " its passage, and required the " wires and other obstructions " to be taken out of the way " so fast as it is possible to proceed therewith." Thereupon, in November, 1901, the company sued out a writ of injunction enjoining defendants " from moving said house over and along plaintiff's track upon Santa Fé avenue and from interfering in any way with the trolley wires, span wires, poles, and overhead constructions of said plaintiff, and from interfering with or interrupting the regular and continuous running of its cars upon its said track."

The defendants answered January 13, 1902, and on the same day filed a cross-bill, praying that the court direct the removal of all obstructions to the passage of the vehicles bearing the house along the avenue, on the ground that the

company accepted its franchise burdened with the duty of so using the street as not to obstruct the same or interfere with travel thereon. On September 20th, the same year, the company dismissed its petition, and five days later defendants amended their cross-petition by alleging that the obstructions of the company interfered with their business as house movers, and also alleging the dissolution of the writ of injunction, and praying for judgment on the bond for damages resulting from its alleged wrongful issuance. October 10, 1903, a motion for more specific statement was sustained and another amendment to the cross-petition filed. February 12, 1904, the court on its own motion directed defendants to file a petition separating the law issues from those to be heard in equity. This was done February 23, 1904, and in June following an answer thereto was filed by the company and also an answer to the cross-petition in equity. Some other pleadings were filed in the equitable cause, and the same came on for hearing February 13, 1905, and on the 6th day of May, 1905, was decided by the entry of a decree dismissing the cross-petition of defendants and amendments thereto. September 28th following the defendants amended their cross-petition at law, and on February 28, 1906, the company amended its answer by pleading, among other things that the decree referred to was an adjudication that defendants had no right " to interfere with and molest the street car track and overhead construction of said company." On the following day defendants amended their cross-petition, and the parties proceeded to trial, resulting in a verdict for the company upon which judgment was entered. The defendants appeal.— *Affirmed.*

*John L. Benbow* and *D. F. Miller,* for appellants.

*George B. Stewart,* for appellee.

LADD, J.— The right of the plaintiff to operate an electric street railway along Santa Fé avenue is not ques-

tioned.   The trial proceeded on the theory that the company

1. STREET RAIL-    had a franchise so to do, and it necessarily
WAYS: inter-
ference with    follows that the means essential for that pur-
same: moving
of buildings.    pose, such as the setting of poles and string-
ing of the trolley and other wires, might be employed.   Of
course, all this must have been done in such a manner as not
unnecessarily to interfere with the ordinary uses of the street
for travel.   No claim is made that this rule was violated
unless it shall be held that moving houses along the highway
is one of these ordinary uses.   The company was in the en-
joyment of a right which is unquestioned.   It may move its
cars along the street according to its own plans, if reasonable
precautions are made for both the service and protection of
the public.   The right to do so is to be guarded as fully
as that of other citizens in their use of the street for travel
by the ordinary means employed for that purpose.   Its
facilities for rapid and convenient transportation have been
established in pursuance of law and the action of the city, at
a large expense, and the value thereof ought not to be un-
duly impaired and the carriage of passengers interrupted by
the obstruction of the street for any considerable time by
the moving of large buildings thereon.   It is true that citi-
zens ordinarily have the right to use the streets to the same
extent as the railway company, but this does not authorize
them unreasonably to occupy such streets, to the exclusion
of all others, or to prevent the passage of cars.   Of course,
the latter may be required to stop temporarily for the load-
ing or unloading of vehicles and the like for domestic and
commercial purposes, for one of the main objects in estab-
lishing streets is to afford access to properties abutting there-
on.   Here the defendants proposed to move the house along
the plaintiff's track for a distance of a mile and a quarter,
thereby not only stopping the running of its cars for many
hours and probably for several days, but requiring the re-
moval of its trolley and other wires as well.   This would
be inconsistent with the company's right to occupy the street.

Section 767 of the Code provides that "cities and towns shall have the power to authorize or forbid the construction of street railways within their limits and may define the motive power by which the cars thereon shall be propelled; and to authorize or forbid the location and laying down of tracks for railways and street railways on all streets, alleys, and public places; but no railway track can thus be located and laid down until after the injury to property abutting upon the street, alley, or public place upon which such railway track is proposed to be located and laid down has been ascertained and compensated for in the manner provided with reference to taking private property for works of internal improvement."

Having made compensation for any injury resulting to abutting property, laid its track in the street, and established its line in pursuance to this statute, the company had the right to operate the same, and to the full, free and complete exercise of the franchise with which it was clothed. That a street railway interferes with ordinary travel to some extent cannot be doubted. This is necessarily taken into account in permitting its use of the street and in assessing damages resulting therefrom. And there is no doubt but that one desiring to change the location of a house or other structure may move it along a public street, providing the conditions of the street are such that this may be done without injury to others having a prior right thereto, and providing, further, that this does not by interfering with travel become a nuisance. But, where the use of the street has been lawfully appropriated in so far as essential for the operation thereon of an electric street railway, one of the modern conveniences of travel and transportation, there is no tenable ground for demanding that its operation shall cease or be unduly interfered with, or that the value of its franchise shall be impaired or its property destroyed to enable another to make an unusual and extraordinary use of the street in the moving of houses or other structures over it.

This would be inconsistent with the franchise granted to which the street has become subject. The rights of the defendants to the use of the street was limited by those of the company to operate its cars thereon, and they could not insist upon the elimination of its franchise rights in order to give way to them over the road in moving the house. In other words, the defendants had the right to the use of the street as it was, with the trolley line in operation, and not as it would have been had no franchise been granted by the city of Ft. Madison; and, as they could not move the house lengthwise on the street as they intended without occupying the company's track, destroying the trolley line, and interrupting for a considerable time the operation of its cars, the jury was rightly instructed that they were not entitled to take the house into that street. As directly in point, see *Millville Traction Co. v. Goodwin,* 53 N. J. Eq. 448 (32 Atl. 263); *Williams v. Citizens' Ry. Co.,* 130 Ind. 71 (29 N. E. 408, 15 L. R. A. 64, 30 Am. St. Rep. 201); *Dickinson v. Electric L. & M. Co.,* 53 Ill. App. 379; Croswell on Electricity, section 259; 1 Joyce on Electric Law, section 481; Roads and Streets, 578. See, for the valuable discussion of the subject, *Northwestern Tel. Co. v. Anderson,* 12 N. D. 585 (98 N. W. 706, 65 L. R. A. 771, 102 Am. St. Rep. 580). In *Williams v. Citizens' R. Co., supra,* in deciding a like question: "The purpose for which highways are laid out and dedicated is that of travel in the usual modes. It would be strange, indeed, if large buildings could be moved along the thronged streets of a city without control or restriction; and it would be equally as strange if the owner of a building could destroy the property of others in order to enable him to move his building from one place to another."

II. As the defendants had no right to move the house along the company's track, it necessarily follows that, in order to have recovered on the bond, they must have shown that they had not threatened to tear down the overhead con-

struction, or to use the company's track as alleged, for this

2. SAME: in-
junction:
recovery
upon bond.

was all the writ of injunction prohibited them from doing. This issue was fairly submitted to the jury. Its finding was for the company,

so that, even if there was error in the rule for the measure of damages as given by the court, and there was none, defendants could not have been prejudiced thereby.

The contention that the dismissal of the petition for the writ of injunction constituted an adjudication is disposed of by section 3764 of the Code. As defendants had no right

3. ADJUDICATION.

to move the house on the company's tracks, it is not important whether this had been ad-

judicated in the equity case. The suggestion that defendants were entitled to notice before the issuance of the writ of injunction is without merit. Other matters touched in argument require no consideration.— *Affirmed.*