KIBBIE TELEPHONE CO. *v*. LANDPHERE.

TELEGRAPHS AND TELEPHONES—HIGHWAYS AND STREETS — RIGHT TO USE.

Under section 6691, 2 Comp. Laws, giving to telephone companies organized under the act of which such section is a part the right to use the highways and streets of this State, provided the same shall not injuriously interfere with other public uses of such highways, a person desiring to move a building along a public street upon which telephone lines are maintained with the consent of the municipal authorities cannot do so in disregard of the rights of the telephone company, such use of the street not being an ordinary, but an extraordinary one, not to be exercised except upon permission under such restrictions safeguarding the rights of the public as necessity may require.

Appeal from Van Buren; Des Voignes, J. Submitted November 11, 1907. (Docket No. 148.) Decided March 5, 1908.

Bill by the Kibbie Telephone Company to enjoin Frank Landphere and H. B. Hoagland from cutting, removing or destroying certain telephone wires. From an order sustaining a demurrer to the bill, complainant appeals. Reversed.

*Thomas J. Cavanaugh*, for complainant.

*Chase & Stevens*, for defendants.

McALVAY, J. This is an appeal from an order sustaining a demurrer and dismissing complainant's bill, which was filed in the Van Buren circuit court to restrain and enjoin defendants from injuring the property of complainant by cutting, removing, or destroying certain telephone wires. Complainant is a telephone company organized and doing business as a Michigan corporation under

chapter 177, 2 Comp. Laws, and has large property inter-
ests in the village of Paw Paw and through Van Buren
county, consisting of poles, wires, exchanges, and the usual
fixtures necessary for carrying on the business of trans-
mitting telephone messages for hire from place to place in
Michigan and other States, for its customers and the public
generally.   It has more than 2,000 subscribers in Van Bu-
ren county where its principal business office is located.
Its poles and wires have been placed upon and along the
streets of Paw Paw, which is an incorporated village,
with the permission, direction, and acquiescence of the
village authorities, and at places and in the manner in-
dicated by them.   No ordinance granting complainant a
franchise to occupy and use the public streets has been
asked of or required by said village.   Defendant Land-
phere is engaged in the business of moving buildings,
and defendant Hoagland is the owner of a large barn
which he has engaged Landphere to move for
a long distance through the streets of Paw Paw.   To
take this building along the route proposed will re-
quire the cutting, destroying, or removing of 28 of the
wires of complainant connected with its customers' tele-
phones, and required to be and continue in perfect order
and condition to transmit messages at all times.   Com-
plainant proposed to defendants to make the cuttings nec-
essary to allow the free passage of this building with the
expert linemen in its employ, provided defendants would
secure in some way the payment of the actual expense for
such work, estimated at $15.   Defendants refused to do
this, and on June 16, 1907, notified the complainant that
on June 18th following they would move the building and
tear down, cut, remove, or destroy such wires as were
necessary for a free passage of the building, regardless of
complainant's property rights or interests.   It is averred
that defendants are financially irresponsible; that Land-
phere has never filed a bond or guaranty that would pro-
tect complainant against loss and damage, and that
Hoagland has no removal permit; that the action of de-

fendants, if permitted, will cost the complainant a large sum for repairs, and will work great damage to its property by the destruction of its wires and electrical currents, and great and irreparable loss to its business. The bill was filed and a preliminary injunction was issued June 18, 1907.

There is no dispute in the case but that whatever rights complainant has to use and occupy the streets of the village of Paw Paw, aside from the acquiescence and direction and license of the village authorities, are the rights created by virtue of the statute (section 6691, 2 Comp. Laws) under which it is organized, which provides:

"Every such corporation shall have power to construct and maintain lines of wire or other material, for use in transmission of telephone messages along, over, across, or under any public places, streets, and highways, and across or under any of the waters in this State, with all necessary erections and fixtures therefor: *Provided*, That the same shall not injuriously interfere with other public uses of the said places," etc.

The court in sustaining the demurrer held that the use of the streets for moving a building was a public use, and therefore, in the contemplation of the statute, included within the words "other public uses," with which complainant was charged not to injuriously interfere. The court also held that complainant acquired its rights subject to such use of the streets, and upon reasonable notice it was its duty to temporarily raise, lower, or remove its wires to permit free passage of this building without expense to defendant.

The statute recognizes that the use of the streets, highways, and places complainant is authorized to exercise is a public use. There is no suggestion in the record that the use of these streets by complainant has been such as to interfere with all ordinary public uses, or that it has not in all respects placed its wires and poles in such places and manner as have been indicated by the proper authorities of the village.

We must say then that complainant has acquired vested rights under the statute and the direction and license of the village authorities to use its property so located in the streets and highways of Paw Paw for the purposes of its business, and for the purpose of carrying out its contracts with its customers, and unless the claimed right of defendants to use the street as they propose, and to interfere with and destroy complainant's property and injure its business, can be justified under the proviso and reservation of the statute, such interference cannot be sustained and would be an appropriation of property without due process of law.

Such vested rights of complainant cannot be impaired or destroyed without express reservation. The status of complainant as to its occupancy has been mentioned briefly, but before proceeding further with the case it is necessary to give it more careful consideration. While the village authorities had not passed an ordinance, they had acquiesced in complainant's occupancy, and had gone further, by designating and directing the place and manner of the construction of the lines in the streets. Under this condition and permission, complainant had made the necessary investment and entered into its contracts with its customers. We do not agree with defendants that these conditions were different, as far as complainant's rights of property are concerned, than if an ordinance had been enacted granting charter rights.

Under the ordinances, the authorities hold that where the companies had constructed their lines, etc., rights vested which could not be divested without due process of law. The express reservation of the statute is: " Provided, That the same shall not injuriously interfere with other public uses of said places, etc." The same authorities hold that the use of a street for moving houses is not a usual but is an extraordinary and unusual one. *Northwestern Telephone Exchange Co.* v. *Anderson*, 12 N. Dak. 585 (65 L. R. A. 771); *Williams* v. *Railway Co.*, 130 Ind. 71 (15 L. R. A. 64); *Dickson* v. *Motor Co.*, 53

Ill. App. 379; *Millville Traction Co.* v. *Goodwin*, 53 N. J. Eq. 448.

We come to the question whether the use of streets for the purposes of moving buildings is within the uses reserved in the statute. The authorities already cited answer this proposition in the negative. In *Northwestern Telephone Exchange Co.* v. *Anderson*, supra, the court, after holding that such use was not an ordinary one, said:

"It does not pertain to the primary right to the use of the street for travel or other public purposes. The public derives no benefit therefrom generally. Such extraordinary use of a street may, however, be permitted as a favor, under restrictions safeguarding the rights of the public to the street in certain cases, as necessity may require."

*Williams* v. *Railway Co.*, supra, was an injunction case where a street railway complained that the moving of a building would destroy its property. The court said:

"Where a right to use a street is acquired pursuant to statute, and under a license from the municipality, it is in the nature of a contract right. * * * It would violate the plainest principles of law to permit an individual citizen to confiscate or destroy the property of a corporation which has assumed to exercise rights under the laws of the State, and to which the officers of a governmental subdivision have given recognition by granting to it the right to use the streets of a city. This would be true even in a case where no extraordinary claim was asserted by the individual, and certainly is true where an individual claims the right to make an extraordinary use of the public streets."

In *Taylor* v. *Railway*, 91 Me. 193, the court defined what uses of highways were public uses, saying:

"What servitude then does the public acquire by the taking of land for a public highway? It is the right of transit for travelers on foot and in vehicles of all descriptions. It is the right of transmitting intelligence by letter, message or other contrivance suited for communication, as by telegraph or telephone. * * * It is a public

use for the convenience of the public to be moulded and applied as a public necessity or convenience may demand as the methods of life and communication may from time to time require."

No authorities have been found which hold that the use defendants sought to put this street to was a usual and ordinary public use, but the consensus of the authorities is to the contrary. Complainant's use of these streets was an authorized public use. The use defendants proposed to exercise was an unusual and extraordinary use and was not "such other public use" contemplated by the statute. Complainant's rights were paramount to defendants' and it was entitled to the relief it sought.

We therefore hold that complainant in and by its bill of complaint stated a case within the jurisdiction of a court of equity and that the demurrer should have been overruled. The decree of the circuit court is reversed, with costs of both courts, and the cause will be remanded to the circuit court with permission to defendants to answer the bill of complaint within 15 days after notice of the filing of the decree and order of this court.

GRANT, C. J., and BLAIR, MOORE, and CARPENTER, JJ., concurred.