## INTERFERENCE WITH TELEPHONE LINE BY MOVING BUILDING.

Common Pleas Court of Sandusky County.

THE CLYDE TELEPHONE CO. v. F. M. PARMENTER ET AL.

Decided, December 23, 1908.

*Use of Streets for Moving Building—Interference with Telephone Wires and Poles—Vested Rights of Telephone Company Arising from Prior Occupancy—Expenses of Changing Wires and Poles or Modifying Shape of Building—Injunction—Estoppel.*

1. Neither the moving of a building nor the operation of a telephone line along a street is an original or primary use of the street, but both are permissible under proper restrictions and with due regard to the rights of others.
2. The vested rights of a telephone company, arising from prior occupancy under a franchise require that where poles, wires or cross-arms must be removed, or the shape of a building modified, in order that it may be moved along a street upon which a telephone line is located, the expense of such changes must be borne by the house mover.

*Homer Metzger,* for plaintiff.
*D. A. Heffner,* contra.

RICHARDS, J.

This case is an injunction suit involving a controversy arising from the location of the plaintiff's wires, poles and cross-arms on certain streets in the village of Clyde, and the removal of a house belonging to the defendant through those same streets. The plaintiff brought the action for the purpose of preventing the defendant from interfering with its telephone poles, wires, cables, etc., in the removal of this house. The plaintiff operates a general telephone business in the village of Clyde and vicinity.

The defendant began the removal of the house, and had gotten the house out from the lot onto Buckeye street, and was moving it northeast when it came into collision with and broke a pole and cross-arm belonging to the plaintiff company, and disarranged some of the plaintiff's wires, and thereupon this injunction suit was brought.

The case came up in this court upon a motion to dissolve the injunction, and as a result of that hearing the injunction was so modified as to order the defendant to cut off a section of the gable of his house sufficiently to allow its removal in the streets, and requiring the p'aintiff to put in the hands of the clerk of this court an amount of money reasonably sufficient to pay that expense, the court reserving the right thereafter to determine who ought to stand the expense.

After the modification of the injunction, the defendant altered the house so that it might be removed along the streets, and it was removed and placed in the location desired by the defendant, and this case comes on for hearing upon the merits, to determine who ought to stand this expense ,and pay the costs of the action.

The statutes of Ohio, Revised Statutes, 3454 to 3471-8, give certain rights to telephone companies for the construction of lines of poles in the streets of municipalities and upon the highways, with the provision that they shall not be so built as to incommode the public. The plaintiff company, in addition to this statutory right, had a franchise in the village of Clyde, providing for the specific location of its lines within the municipality. The general statutory rights are discussed in the case of *Farmer et al* v. *The Columbiana County Telephone Co.*, 72 Ohio St., 526.

The primary use of the streets, of course, is for the purpose of travel, and in the judgment of this court neither the moving of a house nor the operation of a telephone line is an original or primary purpose of the street. Neither one of them subserves the purposes of travel, but each of them is an allowable use of the street, provided it is used under proper restrictions, and with due regard to the rights of others.

It has been held that the use of a street by an electric railroad is a primary use of the street, as it subserves the purposes of travel. See *Railway Company* v. *Telegraph Association*, 48 Ohio St., 390.

That case also decides that it could not be held that a telephone company, the business of which is to transmit intelligence, is using the streets for the purpose of travel, the primary use to which the streets are dedicated.

Nevertheless, the telephone company, by obtaining a location, and accepting it, and constructing its line upon the location granted, does acquire property rights, provided it does not violate the statute which says it must not incommode the public. I think that expression means, incommode the public in the use of the streets for the purposes to which streets are usually devoted. See *Northwestern Telephone Exch. Co.* v. *Anderson et al,* 98 N. W. Rep., 706 (12 N. Dak., 585). This is a case which has been found important enough to be reported in two series of collected reports, the case being found further in 102 Am. State Rep., 580, and 65 L. R. A., 771.

The court say in the syllabus, reading now from the 102 American State Reports, at page 580:

"The acceptance of the terms and conditions of an ordinance granting to a telephone company the use of the streets of a city constitutes a contract between the company and the city, and the construction of its line at large expense gives such company vested rights which the city can not impair by granting to persons the use of such streets for private purposes or extraordinary uses.

"House moving in a street is an extraordinary use thereof, and while it may be permitted, it can not be allowed so as to destroy the use of the street for the purpose of travel or other necessary public purpose, or to destroy or impair vested rights.

"A licensed house mover in a city is liable for an injury done by him, while moving a house, to the wires and property of a telephone company authorized by ordinance to establish and maintain a telephone line and system in the streets of such city."

This case reviews the decisions pretty fully up to that time, and is a comparatively recent case, being only some four years of age, and it contains a very thorough consideration of the questions involved.

Another case, more recent yet, is the case of *Kibbie Telephone Co.* v. *Landphere,* 115 N. W., 244 (151 Mich., 309), a decision of March 5th, 1908.

The Compiled Laws of Michigan, Section 6691, provide that every telephone company organized thereunder shall have the power to construct and maintain lines for the transmission of telephone messages through the public streets and highways with all necessary erections and fixtures therefor, provided that the

same shall not injuriously interfere with other public uses of said places. *Held:* That the use of the streets for moving a building was an unusual and extraordinary use, and was not such "other public use" as was contemplated by the statute. Where the telephone company, under the powers conferred upon it by the statute under which it was organized, erects its poles, wires, cables, etc., in a proper manner in the streets and highways, it has a vested right to their use and maintenance, and interference with them or destruction of them would be an appropriation of property without due process of law, which should be restrained.

Our own circuit court has had occasion to pass on a question somewhat similar, being a case of the removal of a structure across an electric road. See *Toledo, B. G. & S. Traction Co. v. Sterling*, 9 C. C.—N. S., 200. See, also, *Williams* v. *Citizens' Railway Company*, 30 Am. State Rep., 201 (15 L. R. A., 64; 130 Indiana, 71).

Such, then, are the general rights of a telephone company located in and along the streets, and of a house mover. Are there any facts in this case that would amount to a waiver, or estoppel, on the part of the plaintiff? It has been urged, on the part of the defendant, that in a conversation had between the defendant and the manager of the plaintiff company, the company waived any right it had, and should be prevented from exacting from the defendant the cost of the removal of the poles and lines, or for the alteration of the house.

It was found by the court that the cutting off of some four feet of gable would be cheaper than changing the pole lines. The number of lines and poles interferred with was so great that the evidence showed it would be less expensive to alter the house, and that was the sole reason for cutting the house, instead of changing the poles and arms.

The defendant in this case had obtained from the mayor of the village of Clyde a written permit for the removal of this house, and had interviewed the manager of the plaintiff company with regard to the removal before beginning the undertaking, and they both agree that it was said by Mr. Fuller, the manager, that the wires would be taken care of to the extent that he might go ahead and start. To that extent they agree.

The manager of the company denies any agreement that he would take care of the poles and wires and cross-arms, and provide for the removal of the house down Buckeye and Main and Duane streets.

It may be, if the evidence showed an agreement on the part of the company to take care of its poles, cross-arms and cables, and the defendant had begun his moving, which he would not otherwise have done, that the plaintiff would be estopped; but there is no evidence in this case that the plaintiff, at the time of this conversation, had any knowledge that the removal of the house would interfere with the line of poles and arms along the street.

While Mr. Fuller resides on the same street that this house was on, yet he naturally did not observe the precise width of it; neither did he know the precise distance between the poles. In fact it is very doubtful whether the defendant himself believed, until he got his house on the street, that so many poles would be interfered with.

The company of course knew that to get this house upon the street would require the removal or elevation of the cables and wires reaching along the street in front of the house, but the conversation occurred at the People's Bank, and not upon the street where the pole line might have been examined, and the distance observed and the isze of the house measured or observed, and I am convinced from the evidence that it was not thought of at the time that there would be such a serious interference, if there would be any interference, with the poles themselves, or the pole arms, along a large part of Buckeye street and Duane street.

Shortly after this conversation the parties again met at the location of the house. At that time the house had been raised from the foundations, and while the evidence is not very clear on that, I think it had been moved off from part of the foundation. Just how far it had been moved is not clear; but it had at least been placed on trucks and moved part way to the street, and then it was apparent to the manager of the plaintiff company that to move the house along the streets would seriously interfere with many of the poles and arms and cables, and then the defendant was told by the manager of the company that the

company would not stand the expense, and Mr. Parmenter said he didn't think he ought to stand for it, and a bond was talked of, no amount being stated, and the plaintiff company declined to make the change unless the defendant would secure the amount of expense, which the defendant declined to do.

Now I think that suggestion was made promptly, as soon as the plaintiff company ascertained that the removal of the house would cause serious interference, and because the plaintiff company did not have that knowledge at the time of the conversation, it does not appear to the court to have been considered, nor that there could be any waiver or estoppel by the language then used.

The plaintiff's manager testifies that the only thing that he agreed to do was to take care of the wires, so the house could get on the street.

Of course the court can not find that he expected the house to be moved out on the street and stay there, but the court does find that at the time of the conversation, the parties did not have any accurate knowledge of the extent of the interference with the pole line by the removal of the house down the street, nor did the plaintiff know that it would interfere at all, and therefore there is nothing in the conduct or the conversation of these parties that would vary the general rule in the cases already cited, that the prior occupancy of the company gave it vested rights.

It is said that if these poles were higher and further apart, there would not be so much interference, which, of course, would be true. It is also said that on account of the density of the foliage and the location of the trees, the line could not be otherwise located. But it appears to the court that the precise location of this line is a matter that rests within the control of the municipal authorities, acting, of course, not arbitrarily, but in good faith.

No doubt the municipal authorities have the right to require the company to change lines of telephone poles, if the council in good faith so decide. But this telephone line being satisfactory to the municipal authorities, and leaving space sufficiently wide for ordinary travel, a person desiring to move a house can not contend that the location is improper.

Finding and decree for the plaintiff.