## I. D. DAY et al., Respondents, v. CONSOLIDATED LIGHT, POWER & ICE COMPANY, Appellant.

### Kansas City Court of Appeals, March 1, 1909.

1. **ELECTRIC WIRES: Negligence: Care.** A person transmitting electricity along public thoroughfares of a populous community must exercise the highest degree of care to prevent its escape from the carrying wires.

2. **———: ———: ———: Uninsulated Wires: Trespass: Licensee: Evidence.** Plaintiff occupied the third story of a building with her family and boarders. Her windows overlooked and afforded easy access to a metal roofed building within six inches and parallel to the end of which ran an electric lighting wire. This roof was used more or less to hang out clothes, sleeping place for the tenants and a play ground for the children. Plaintiff's six year old boy was lured onto the roof in search of his ball and his body was found at the end looking down with his head against the wire, which was uninsulated at that point. *Held*:
   (1) That the boy was not a trespasser nor a mere licensee.
   (2) That the electric company's failure to keep the wire insulated constituted negligence.

(3) That the mother of the boy on the evidence was not guilty of negligence as a matter of law.

(4) That the child was not guilty of contributory negligence.

3. ————: ————: **Burden of Proof: Instruction.** An instruction set out in the opinion is held to require the defendant to show that the boy was not killed by its negligence and was error since the burden continued upon plaintiff to the end of the case to show defendant's negligence; and besides the question of plaintiff's negligence was on the evidence an issue of fact for the jury.

Appeal from Jasper Circuit Court.—*Hon. Haywood Scott,* Judge.

REVERSED AND REMANDED.

*E. H. McVey, John A. Eaton* and *A. E. Spencer,* for appellant, submitted argument.

*Perkins & Blair* and *Walden & Andrews* for respondent.

(1) Plaintiffs made a prima-facie case by showing by substantial testimony that defendant's wires, charged with an electric current sufficient to cause death, were maintained by defendant with the insulation in a rotten and defective condition at a point in a public alley where persons had a right to go, and where it knew or could have known that persons were likely to come in contact with said wires; and further showing that plaintiffs' six-year-old son, while at this place came in contact with said wires and was killed. Geisman v. Elec. Co., 173 Mo. 654; Consol. Elec. Co. v. Walters, 89 Pac. 815; Harrison v. Light Co., 195 Mo. 606; Keasbey on Elec. Wires, par. 249; Hoepper v. Hotel Co., 142 Mo. 378; Miller v. Railroad, 90 Mo. 394; Graney v. Railroad, 140 Mo. 98; Smith v. Railroad, L. R. 6 C. P. 20; City of Dixon v. Scott, 181 Ill. 116; 21 Am. and Eng. Ency. Law (2 Ed.), 488; Gannon v. Gas Co., 145 Mo. 502; Girandi v. Fl. Mun. Co., 28 L. R. A. 596;

Ryan v. Transit Co., 190 Mo. 633; Simmons v. Shreveport El. Co., 41 So. 248; Hydraulic Wks. v. Orr, 83 Pa. 332; Warren v. City Elec. Co. (Mich.), 104 N. W. 613; Van Winkle v. Steam Boiler Co., 52 N. J. Law 240, 19 Atl. 472; Temple v. Light Co., 11 L. R. A. (N. S.) 449; Nelson v. Branford L. & W. Co., 54 Atl. 350; Keasbey on Elec. Wires, par. 248; Connell v. Power Co., 131 Iowa 622, 109 N. W. 177; Greenville v. Pitts (Tex. Civ. App.), 18 Tex. 217, 102 S. W. 451; Guinn v. Del. & A. T. & T. Co., 3 L. R. A. (N. S.) 988; Caglione v. Mt. Morris El. L. Co., 67 N. Y. Supp. 660; Commonwealth El. Co. v. Melville, 70 N. E. 1052; Tel. Co. v. Booker, 103 Va. 595, 50 S. E. 148; Light Co. v. Garden, 78 Fed. 77; Ambros v. Light Co., 108 N. W. 540; Daltry v. Media El., etc., Co., 57 Atl. 633; Telephone Co. v. Sokola, 73 N. E. 143; Croswell, Electricity, par. 256. (2) Appellants complain of the giving of instruction 6, and respondent concedes that it is open to criticism but, taken in connection with defendant's instructions 4, 5 and 6, the jury could not have been misled.

JOHNSON, J.—Plaintiffs were the parents of Shelton Day Moody, a boy six years old at the time of his death which occurred February 14, 1907. Defendant is a corporation engaged in the business of manufacturing and vending electricity for light and power in the city of Joplin. The death of the child was caused by an electric shock which he received by coming in contact with one of defendant's highly charged wires, and it is alleged in the petition that defendant was negligent, first, in placing the wire and, second, in permitting it to remain in a defective and dangerous condition caused by the decay and consequent removal of a part of the insulation.

The answer is voluminous, but in effect the main defenses interposed are a general denial and a plea of contributory negligence. Verdict and judgment were

for plaintiffs in the sum of $2,000, and the cause is here on the appeal of defendant.

First, we shall dispose of the questions raised by the contention of defendant that its request for an instruction peremptorily directing a verdict in its favor should have been granted. Material facts disclosed by the evidence of plaintiffs are as follows: At the time of his death, the boy was living with his mother (now Mrs. Moody), who kept a rooming house on the third floor of a business house in Joplin at No. 413 Main street. Adjoining this building on the south was a two-story store building with a flat tin roof. Windows in Mrs. Moody's apartments afforded easy access to this roof, and the evidence tends to show that the roof was used as a back yard by Mrs. Moody, her family and tenants. A clothes line was stretched across it; in the summer, tenants sometimes slept there and, at times, children used it as a playground. We are stating the facts in their aspect most favorable to the cause of action asserted—a thing we should do in ruling on the demurrer to the evidence. The owner of the adjoining building was not Mrs. Moody's landlord and there is evidence that he complained about the roof being littered with trash and refuse, but he made no complaint to Mrs. Moody and it is fair to say that for a long period, he tacitly acquiesced in the use of the roof by her and her tenants. Early in the afternoon of February 14, 1907, the boy was playing with a return rubber ball in one of the rooms of his mother's apartments. The weather being pleasant, the window was open and the ball accidentally bounded out onto the roof. The boy went after the ball and had been on the roof but a few moments when his mother, who was at work in one of the rooms, observed him and called him to come in. He replied that he would obey as soon as he could get his ball. At this time, a woman lodger asked him to hand her a shirtwaist which was on the clothes line. He did so, and then started towards the alley end of

the roof. In a short time, his mother called again to him and receiving no response, she looked out and saw him lying on the roof near the end. It was discovered that the ball had rolled off into the alley and the position of the body (the boy was dead) indicated that the child had crept to the end of the roof and looked over into the alley to see where the ball had fallen. Evidently he had grasped the metal gutter with his hands and protruded his head far enough to bring his forehead into contact with the electric light wire owned by defendant which, at the time, was charged with a deadly current of electricity and from which the insulation had worn off at the place of contact. A downspout, in all likelihood, served to complete the new circuit afforded the current by the contact of the boy's head with the wire. The wire was on a line which defendant had built along that side of the public alley. At the rear end of the building, the wire ran parallel to the end of the roof and was about six inches out from the edge of the gutter and about the same distance above it. There is evidence to the effect that defendant had received actual knowledge of the defective and dangerous condition of the insulation a long time before the injury occurred.

The highly dangerous and subtle nature of electricity has compelled the courts of this State to require of persons who make merchandise of it and who transmit it along the public thoroughfares of populous communities the exercise of the highest degree of care to prevent its escape from appointed channels. Where it reasonably may be said that an ordinarily careful and prudent person observing the highest degree of care would anticipate that persons in the exercise of lawful right might be brought into contact with wires carrying powerful currents of electricity, the law charges the owner of such wires to insulate them and to maintain them in a proper state of repair. This is on the broad and fundamental principle "that in all cases in

which any person undertakes the performance of an act which if not done with care and skill will be highly dangerous to the persons or lives of one or more persons known or unknown, the law *ipso facto* imposes as a public duty, the obligation to exercise such care and skill." [Van Winkle v. Insurance Co., 19 Atl. 472.]

In Geismann v. Electric Co., 173 Mo. 674, the Supreme Court said: "Electricity is one of the most dangerous agencies ever discovered by human science, and owing to that fact it was the duty of the electric light company to use every protection which was accessible to insulate its wires at all points where people have the right to go, and to use the utmost care to keep them so; and for personal injuries to a person in a place where he has a right to be without negligence upon his part contributing directly thereto, it is liable in damages." [McLaughlin v. Electric Light Co., 100 Ky. 173.] In Winkelman v. Electric Light Co., 110 Mo. App. 184, we said: "Considering the noiseless, hidden and destructive power of electricity, a reasonable effort to control it is nothing short of the utmost effort —nothing less than the utmost would be a reasonable effort." And, later, in Byerly v. Light, Power & Ice Co., 130 Mo. App. l. c. 601, we reiterated the rule in the following language: "The utility of this agency is fully appreciated by the courts and no desire is entertained to restrict its use, but the fact that when it is not kept closely confined within appointed channels, its tendency to break loose and its capacity for evil are so great, impels the courts to lay down the rule that persons who engage in the business of transmitting highly destructive currents of electricity must exercise the highest degree of care to prevent their escape from the carrying wires."

This rule impels us to declare that if defendant, at any time before the injury, had reason to anticipate, while employing the highest degree of care, that persons rightfully on the roof of the building might come

into contact with the wire, it became its duty to exercise the highest degree of care to repair or replace the defective wire, and a breach of such duty would constitute negligence.

It is argued by defendant that the boy was a trespasser on the roof, or, at any rate, was a mere licensee and that in either case, defendant had no reason to anticipate his presence there and, therefore, was under no duty to guard against injuring him. The evidence of plaintiff shows that if defendant did not have actual, it did have constructive knowledge of the fact that the occupants of the adjoining building—children among them—were in the habit of using the roof, and we think an ordinarily prudent person in the situation of defendant should have anticipated that such usage likely would result in some person being brought into contact with a wire in such close proximity to the end of the roof. Children will play and they will give rein to natural curiosity. It was to be expected that playthings, such as balls or marbles might fall into the alley and in such cases it would be in accordance with the impulses of child nature for the owner to attempt, as this boy did, to discover his lost plaything from the end of the roof. And, further, it would have been a very natural act in a child to take hold of a wire so close from no other motive than that of mere idle curiosity or playfulness. A reasonable person in defendant's situation should have known that the wire in its defective condition was a menace to the safety of children in the habit of using the roof as a playground.

The precise nature of the relationship of the boy to the owner of the premises is not important. It is enough to know that he and the other persons who used the roof were not trespassers. The usage being with the permission of the owner, express or implied, the child was rightfully there so far as defendant was concerned. This case differs from those where the plain-

tiff was a trespasser on the property or a mere licensee of the defendant. No such relation existed between defendant and the boy, but as we have intimated, the boy, as to all persons except the owner of the building, was using the roof as rightfully as though he owned the premises himself. There is not sufficient ground in the facts before us for declaring the mother of the child guilty in law of negligence. Under the facts disclosed, the characterization of her conduct was an issue for the jury to solve. There is no merit in the suggestion that this child, only six years old, was guilty of contributory negligence. The demurrer to the evidence was properly overruled.

On behalf of plaintiffs, the court gave the following instruction: "The court instructs the jury that one of the defenses in this case is contributory negligence, and that the burden is on the defendant to establish to the satisfaction of the jury by the greater weight or preponderance of the evidence that plaintiff's son, Shelton Day, was killed by his own negligence or the negligence of his mother, contributing thereto and *not by the negligence of the defendant,* and unless the jury so believe they will find against the defendant on the question of the contributory negligence of said Shelton Day and his mother, but in passing upon the question of the contributory negligence of said Shelton Day, the jury will have the right to take into consideration the age of plaintiffs' said son, Shelton Day."

The clause italicized imposed on defendant the burden of satisfying the jury that the injury was not caused by the negligence of defendant. This was palpable error. The burden remained on plaintiffs to the end of the case to show affirmatively that negligence of defendant charged in the petition was the proximate cause of the injury. The error was prejudicial and was not cured by the instructions of defendant. We answer the suggestion that there was no evidence on which to base a finding that the mother of the child was negli-

gent by saying that the facts and circumstances in evidence would support an inference of negligence on her part. She said she did not know that the wire carried a dangerous current of electricity, but that statement is not conclusive. A reasonable person well might think that an ordinarily careful and prudent mother would not suffer her child of such tender years to play on the roof or even to go there. We are going as far as we should go when we declare that the mother's conduct was an issue of fact for the jury to determine.

We find no other error in the record, but for that just considered the judgment is reversed and the cause remanded. All concur.