RALPH BLACKBURN, Respondent, v. SOUTH-
WEST MISSOURI RAILROAD COMPANY, Ap-
pellant.

Springfield Court of Appeals, June 13, 1914.

1. **PERSONAL INJURIES: Negligence: Violation of City Ordinance as Defense.** The violation of a city ordinance will not defeat a recovery in an action for personal injuries, unless such violation is the proximate and efficient cause of the injury.

2. **TECHNICAL TRESPASSER: Uninsulated Electric Wires: Liability.** One who is moving a house along a street of a city without a permit required by the city is a technical trespasser merely and where he is injured by coming in contact with an uninsulated electric wire, which was maintained in a negligent and dangerous manner by defendant, such defendant is not relieved of the duty of exercising toward him the degree of care required of users of electricity.

3. **HOUSE MOVING: Permit for: Use of Public Highways.** The moving of houses along a public highway is a privilege that may be rightfully granted by the proper authorities so long as such use does not amount to a nuisance or destroy private property or impair the obligations of a contract.

4. **ELECTRICITY: Uninsulated Wires: Ownership: Liability.** Plaintiff was injured by coming in contact with an uninsulated electric wire, by which current was carried to a school house from the power plant of the defendant company which controlled and maintained the wires. Since the injury resulted from the dangerous exposed current of electricity and not from the wire, defendant could not avoid liability on the ground that it did not own the wire.

5. **INJURIES FROM ELECTRIC WIRES: Defenses: What Not Applicable.** Plaintiff sustained injuries while attempting to raise with his hands an uninsulated electric wire above a house which he was moving along a street. His right of action cannot be defeated on the ground that he was violating section 4579, R. S. 1909, which makes it a misdemeanor to maliciously destroy or tamper with an electric equipment, there being nothing unlawful or malicious in the act nor any attempt at destruction of the equipment.

6. **ELECTRICITY: Distributers of: Degree of Care Required.** The duty is incumbent on those who distribute so highly a dangerous force as electricity to exercise the highest degree of care practicable to protect those from danger who may rightfully go to places that may bring them in contact with wires and other instrumentalities which convey the energy.

7. ————: ————: **Liability of: Insufficient Defense.** Plaintiff was injured while attempting to lift an uninsulated wire above a house which he was moving along a street. The evidence showed that the uninsulated electric wire was strung on poles twenty-five or thirty feet above the street and that the poles also carried telephone wires; that houses were frequently moved along the street; that defendant's employees had assisted plaintiff in moving the house under the trolley wire of defendant company a short time previous and that another house mover had experienced trouble with the same wire. *Held*, that defendant company could not as a matter of law be declared free from negligence on the ground that when wires were strung at the distance above the ground named, defendant could not foresee the accident which occured.

8. **ELECTRIC WIRES: Injuries: Contributory Negligence: Not Chargeable When.** Contributory negligence cannot be charged as a matter of law against a house mover who, in lifting above a house which he was moving along the street, several wires strung together, grasped them with ungloved hands and was injured by an uninsulated electric wire, where such wire was strung with telephone wires similar in size and appearance and plaintiff was in no wise cognizant of the fact that one of the wires carried a dangerous current.

Appeal from Jasper County Circuit Court, Division Number Two.—*Hon. David E. Blair*, Judge.

AFFIRMED.

*McReynolds & Halliburton* for appellant.

(1) Highways are laid out and dedicated for travel by the ordinary modes. No one has a right to move a house along a street except by permission of the municipal authorities. Day v. Green, 4 Cush. 437; Crosswell on Electricity, sec. 569; Keasby on Electric Wires, Sec. 64; Fort Madison Street Railway Co. v. Hughes, 114 N. W. 10, 14 L. R. A., N. S. 448; Dickson

v. Kewanee Electric Light & Motor Co., 53 Ill. App.
379; Telephone Co. v. Dexheimer, 14 N. J. L. 295; Telephone Exchange Co. v. Anderson, 12 N. D. 585, 102
Am. St. Rep. 580, 65 L. R. A. 771, 98 N. W. 706; Traction Co. v. Sterling, 29 Ohio C. C. 227. (2) Even if
plaintiff had obtained a written permit from the city
of Carterville to move the house along the streets of
Carterville, he would not have had any right to interfere with telephone or electric wires strung across the
streets and would have been guilty of a trespass in so
doing. Telephone Exchange Co. v. Anderson, 102 Am.
St. Rep. 580, 12 N. Dak. 585; Electric Light & Power
Co. v. Bloomquist, 185 Fed. 615; Williams v. Railway
Co., 130 Ind. 71; 15 L. R. A. 64; R. S. of Mo.
1909, Sec. 4579. (3) Plaintiff was a trespasser in
moving a house on the streets of Carterville without
a written permit from the mayor or acting mayor and
was therefore guilty of negligence contributing to his
injury, and is not entitled to recover in this case even
though it should be found that defendant was guilty of
negligence in not having the electric wires properly insulated. Rowe v. Hammond, 172 Mo. App. 203, 157
S. W. 880; Reusch v. Rolling Mill Co., 118 Ky. 369,
80 S. W. 1168; Schultz v. Milwaukee, 49 Wis. 254, 5
N. W. 342, 35 Am. Rep. 779; Taylor v. City, 64 Md.
68, 20 Atl. 1027, 54 Am. Rep. 759; Schouteau v. Friese,
14 Mo. App. 436; Weller v. Railroad, 120 Mo. 635. (4)
Defendant owed no duty to plaintiff to insulate the
wires at the point where plaintiff was injured, so plain-
tiff had no right or authority to interfere with said
wires in any way. The wires were at a height, that
they could not interfere with the ordinary and rightful
use of the street; there was no reason for defendant
to expect persons to climb up among said wires and
handle same, and plaintiff in climbing up to said wires
and lifting same was guilty of negligence contributory
to his injuries. Electric Light & Power Co. v. E. Lafevre and wife, 49 L. R. A. 771, 93 Tex. 604; Texas &

P. R. Co. v. Bingham, 80 Tex. 225, 38 S. W. 162; Railroad v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Street Railway Co. v. Groose, 70 Ill. App. 381; McCaughna v. Owosso & Corunna Elec. Co., 129 Mich. 407, 89 N. W. 441; Graves v. Water Power Co., 87 Pac. Rep. 956; Sias v. Railroad, 179 Mass. 343, 60 N. E. 974; Sullivan v. Railroad, 156 Mass. 378, 31 N. E. 128; Railroad v. McGilvray, 62 N. J. L. 451, 41 Atl. 955; Keefe v. Narragansett, etc., Co., 21 R. I. 575, 43 Atl. 542; Electric Co. v. Melville, 210 Ill. 70, 70 N. E. 1052; Hichok v. Power Co., 200 N. Y. 464, 93 N. E. 1113.

*A. F. Gonder* and *Walden & Andrews* for respondent.

(1) Under the facts in the case at bar, which show, without dispute, that moving houses on the streets of Carterville was of almost daily occurrence, and was an ordinary and usual use of the street, we believe the true rule is announced in Graves v. Shattuck, 35 N. H. 257, 69 Am. Dec. 540, 541; Street Railway Co. v. Hughes, 14 L. R. A. (N. S.) 448. (2) Under the great weight of authority, in this State and others, plaintiff, if a trespasser at all, was a mere technical trespasser and was not such a trespasser as would excuse the defendant for negligently injuring him and defendant owed him the duty of, at least, ordinary care. Commonwealth v. Melville, 70 Northeastern 1052; Tel. Co. v. Booker, 103 Va. 595, 50 S. E. 148; Elec. Light Co. v. Garden, 78 Fed. 77, 37 L. R. A. 725; Goodwin v. Tel. Co., 157 Mo. 608; Daltry v. Light Co., 57 Atl. 833-836; Schilling v. Abernathy, 112 Pa. 427, 56 Am. Rep. 320; Day v. Light, Power & Ice Co., 136 Mo. App. 274. (3) The duty of care, which the law imposes upon those who undertake to operate so dangerous a force as electricity, may under some cir-

cumstances, be due to one who is technically a trespasser. Day v. Light, Power & Ice Co., 136 Mo. App. 280; El. Light Co. v. Gardner, 78 Fed. 77. (4) Criminal and penal statutes are strictly construed in favor of the defendant and against the State. State v. McMahan, 234 Mo. 611; Scott v. Royston, 223 Mo. 568. (5) The violation of some statute or ordinance will not prevent a recovery of damages unless the defendant shows that the violation of the law was *malum in se,* or was the proximate and efficient cause of the injury. Reed v. Railroad, 50 Mo. App. 504; Phelan v. Paving Co., 227 Mo. 666; Adams v. Wiggins Ferry Co., 27 Mo. 96; Spofford v. Harlow, 5 Allen, 176; Daman v. Inhabitants, 119 Mass. 66; Smith v. Boston, 120 Mass. 538; Mohney v. Cook, 26 Penn. 342; Kansas City v. Orr, 62 Kan. 61, 61 Pac. 397. (6) It is the duty of an electric light company which has strung its electric wires along the streets of a city, for its own private gain, to see that such streets are at all times maintained in the same condition as to the safety of the persons using them, free from danger of electricity, as they were before the wires were put there. Gunn v. Gas Co., 145 Mo. 502; Hoover v. Railroad, 159 Mo. App. 416-420; Winkleman v. Light Co., 110 App. 184; Bruebaker v. Light Co., 130 Mo. App. 439; Hoepper v. Hotel Co., 142 Mo. 378; Freeman v. Tel. Co., 142 S. W. 733; Campbell v. United Railway, 147 S. W. 788.

FARRINGTON, J.—This is an action to recover damages for personal injuries received by reason of the alleged negligence of the defendant company in failing to insulate certain electric wires which it is alleged to have maintained and controlled.

The defendant is a public service corporation operating a street railway in the city of Carterville and furnishing electricity, for compensation, to persons desiring to use the same along and near its line of railway. In the year 1905, it set poles and strung wires

along Elizabeth street and across Hall street, and these wires were connected with its feed wire and were at all times thereafter charged with a current of electricity of 650 voltage. At the place where plaintiff was injured these wires were entirely uninsulated. They were strung in among some ten or fifteen telephone wires. The expense of erecting the poles and stringing the wires was paid by the Carterville school district which also thereafter paid defendant a stipulated price per month for the current. After the poles were set and the wires strung the evidence shows that defendant assumed control over them and at all times maintained the wires so as to convey its electricity to a schoolhouse located near the place where the connection with the feed wire was made. When the wires in question became dislodged or needed repairing in any way, the work was done by the servants of the defendant company and at no expense whatever to the school district. Some six or seven years prior to the time of plaintiff's injury, a house mover named Galbraith while moving a house came in contact with the wires at the same point in the street at which plaintiff was injured, and there is evidence tending to show that Galbraith took a board and pressed defendant's wires against the telephone wires burning several in two, and that defendant was notified and that its servants came to repair and replace the same.

The plaintiff's injury was sustained while he was moving a house along the public street. Intending to pass under these wires and noticing that the house would strike them, he climbed to the roof and grasped the electric wires together with several of the telephone wires for the purpose of raising them and allowing the house to pass under. The evidence tends to show that he thought all the uninsulated wires he saw there were telephone wires. The undisputed evidence is that all the wires which were strung there together were of about the same size and appearance.

When plaintiff took hold of the wires the contact made thereby practically destroyed his hands.    The evidence shows that the wires were from twenty-two to twenty-five feet above the ground and were properly strung.  However, no point is made as to how they were strung or fastened to the poles, except that they were entirely uninsulated and were placed among a number of similar appearing telephone wires.  On the day before plaintiff's injury occurred, while he was moving the house, defendant's employees assisted him in moving the house under its trolley wire at a point farther down the street, and after he was injured, assisted his employees in moving the house under these wires. The undisputed evidence is that house moving is of almost daily occurrence in that city and mining district; one house mover testified that until 1911 when he went out of the business from one to ten houses were moved along the streets each week; and there is evidence that a number of house movers operate in that city. There is no evidence that plaintiff was unduly obstructing the use of the street by travelers, or was injuring or destroying or attempting to injure or destroy the property of the defendant or others in moving the house at the time of his injury.  The plaintiff recovered judgment for $6500 and defendant appeals.

The defenses to the action were as follows:   (1) That an ordinance was in force in the city of Cartersville requiring house movers to obtain a permit from the proper authorities before they could lawfully move houses along the streets, and that the plaintiff had failed to obtain such permit and was therefore guilty of an unlawful use of the street.  (2)  That even if plaintiff had obtained a written permit as provided by the ordinance he would not have had a right to interfere with telephone or electric wires strung across a street and in doing what he did would have been guilty of a trespass.  (3)  That section 4579, Revised

Statutes 1909, makes it a misdemeanor for any person to "unlawfully and maliciously destroy, injure or otherwise tamper with any  .  .  . line or pole," etc. (4) That the wires in question were placed at such a height and at such a place that they could not interfere with the ordinary and proper use of the street and that the injury was not the natural and probable result of a failure to insulate. (5) That plaintiff was guilty of contributory negligence in voluntarily and knowingly taking hold of the wires at the place and in the manner he did.

All these defenses were embodied in instructions requested by the defendant, some of which were refused, and of this complaint is now made.

The appellant asks us to rule that because the plaintiff was moving the house along the streets of Carterville without first having obtained a permit from the city's authorities as provided by ordinance he must be denied a recovery.

The law of this State is well settled that the violation of an ordinance will not defeat a recovery unless such violation is the proximate and efficient cause of the injury. [Reed v. Railway Co., 50 Mo. App. 504; Phelan v. Paving Co., 227 Mo. 666, 127 S. W. 318; Adams v. Wiggins Ferry Co., 27 Mo. 95; see, also, Platz v. City of Cohoes, 89 N. Y. 219.]

It cannot be argued that had plaintiff possessed a permit at the time of the contact with the wires his injury would have been any the less certain or painful, and the cases relied upon by appellant holding that the violation of an ordinance will defeat recovery are those where the act of violation was in and of itself at least a contributing cause of the injury. [Weller v. Railroad, 120 Mo. 635, 23 S. W. 1061, 25 S. W. 532; Schoenlau v. Friese, 14 Mo. App. 436; Rowe v. Hammond, 172 Mo. App. 203, 157 S. W. 880; Williams v. City of St. Joseph, 166 Mo. App. 299, 148 S. W. 459.]

Appellant contends that even if plaintiff had obtained a permit as required by the ordinance, his action in interfering with its wires amounted to a trespass and bars recovery.

The moving of houses along a public highway is a privilege that may rightfully be granted by the proper authorities so long as such use does not amount to a nuisance or destroy private property or impair the obligations of contracts. It is not a common right of the individual, such as to use the street as a pedestrian or with a vehicle, and cannot therefore be said to be an ordinary use of the highway. It is an uncommon and an extraordinary use. [Northwestern Telephone Exch. Co. v. Anderson (N. Dak.), 102 Am. St. Rep. 580, 98 N. W. 706; Fort Madison St. Ry. Co. v. Hughes (Iowa), 14 L. R. A. (N. S.) 448, 114 N. W. 10; City of Eureka v. Wilson (Utah), 48 Pac. 41; Wilson v. Eureka City, 43 L. Ed. (U. S.) 603; Williams v. Citizens' R. Co. (Ind.), 15 L. R. A. 64; Graves v. Shattuck, 35 N. H. 257, 69 Am. Dec. 536; Taylor v. Railway Co., 91 Maine 193, 64 Am. St. Rep. 216; Kibbie Telephone Co. v. Landphere (Mich.), 115 N. W. 244, 16 L. R. A. (N. S.) 689.]

However, merely because plaintiff was using the street in an extraordinary way would not relieve the defendant of the duty of exercising toward him the degree of care required of users of electricity. The record fails to show that the use in question was a nuisance in that it unreasonably obstructed the traffic of the street; nor did plaintiff's action in attempting to raise the wires over the house in any way amount to a damage or destruction of defendant's property or an interference with defendant's use of the wires. Plaintiff at most was a mere technical trespasser.

As was held in Newark El. L. & P. Co. v. Garden, 78 Fed. 74, 77: ''In such a case as this one, its special facts are for consideration, and upon them, and not

solely with reference to the ownership or occupancy of the *locus in quo,* the question of duty must be determined. 'It is true that, where no duty is owed, no liability arises. . . . But, as has often been said, duties arise out of circumstances. Hence, where the owner has reason to apprehend danger, owing to the peculiar situation of his property, and its openness to accident, the rule will vary.' [Hydraulic Co. v. Orr, 83 Pa. St. 332.] It makes no difference, where the circumstances give rise to duty, that the plaintiff was 'technically a trespasser.' [Schilling v. Abernathy, 112 Pa. St. 437, 3 Atl. 792.] The true question is: Was he 'a trespasser there, in a sense that would excuse the defendant for the acts of negligence, . . . whether the owner or occupant of premises is liable under any circumstances, and, if so, under what circumstances, for injuries received by a person while on such premises, and by reason of their dangerous condition?' "

The city was the only one to complain of plaintiff's use of the street under the ordinance. It was not defendant's business to object so long as plaintiff was not molesting its property to the extent of damaging it or interfering with its service, and plaintiff in attempting to lift the wires over the house so far as the record discloses was doing neither. [See, Day v. Consolidated L. P. & I. Co., 136 Mo. App. 274, 117 S. W. 81; Davoust v. Alameda (Cal.), 84 Pac. 760, 5 L. R. A. (N. S.), l. c. 540; Commonwealth El. Co. v. Melville (Ill.), 70 N. E. 1052.] So far as the defendant was concerned, the plaintiff had a right to use the street in the manner shown by the evidence; it was not for defendant to determine how the city's streets were to be used; and because plaintiff was using the street in the manner indicated did not relieve defendant of the duty of not unnecessarily exposing him to the danger which the exercise of the highest degree of care on its part

could have avoided. [Nelson v. Branford L. & W. Co. (Conn.), 54 Atl. 303, 304.]

Appellant contends that it did not own the wires and therefore cannot be held liable for the injury. While the evidence shows that the school district paid for the wire and its erection, there is convincing evidence that the defendant had always repaired it when necessary and maintained it at its own expense, and was then using it as a conduit in supplying its electricity to the schoolhouse making a charge for such as was used, and there was sufficient evidence to fasten the control and maintenance of the wires on the defendant. This required defendant to use such wires with the same degree of care as it would be charged with had it actually owned the same. It was the dangerous current of electricity in the wires that caused the injury, and that the defendant certainly did own and control. [Nagel v. Railway Co., 75 Mo. 653; Fletcher v. Railroad, 1 Allen (Mass.) 9; Brubaker v. Kansas City El. L. Co., 130 Mo. App. l. c. 450, 110 S. W. 12; Goodwin v. Telephone Co., 157 Mo. App. l. c. 606, 138 S. W. 940; Daltry v. Media El. L., H. & P. Co. (Pa.), 57 Atl. 833; Union L., H. & P. Co. v. Arnston, 157 Fed. 540; Palmer v. Village of St. Albans, 56 Vt. 519.]

Nor will the defense set up under section 4579, Revised Statutes 1909, making it a misdemeanor to "unlawfully and maliciously destroy, injure or otherwise tamper with any . . . line or pole," etc., relieve the defendant of liability. There is no evidence that the wires were in any way injured by the act of the plaintiff. The title to the section of the statute is, "Penalty for injuring electrical equipment." A tampering, such as is contemplated by the statute, is one that is unlawfully and maliciously done resulting in an injury to the equipment. Merely attempting to raise the wire a few feet so that the house would pass thereunder would seem on the other hand to be an act done

to prevent an injury to the wires which would have been occasioned by the house running against them, rather than a design to destroy them. Such act would not sustain a criminal prosecution, much less serve as a defense in a case of this kind. Although the act is unlawful and is intentional, an accused may show that it was not done maliciously. [State v. Brotzer, 245 Mo. 499, 150 S. W. 1078; State v. Graeme, 130 Mo. App. 1. c. 144, 108 S. W. 1131.] In Goodwin v. Telephone Co., 157 Mo. App. 596, 138 S. W. 940, it was held that although he did take hold of the wire he could not be held guilty of contributory negligence as a matter of law.

The general law governing the duties of the users of electricity has been well defined in this State, and may be summarized as follows: There is imposed on those who handle and distribute so highly dangerous a force as electricity the duty of exercising the highest degree of care practicable to protect those from danger who through business or pleasure may rightfully go into places that may bring them in contact with wires and other instrumentalities which convey and carry the energy; and this is the degree of care that an ordinarily prudent person will exercise. [Geismann v. Electric Co., 173 Mo. 654, 73 S. W. 654; Harrison v. Electric L. Co., 195 Mo. 606, 93 S. W. 951; Clark v. Railroad, 234 Mo. 296, 137 S. W. 583; Gannon v. Laclede Gaslight Co., 145 Mo. 1. c. 512, 46 S. W. 968, 47 S. W. 907; Davenport v. Electric Co., 242 Mo. 111, 145 S. W. 454; Campbell v. United Rys. Co., 243 Mo. 141, 147 S. W. 788; Campbell v. Springfield T. Co., 178 Mo. App. 520, 163 S. W. 287, and cases cited.]

This proposition is not denied by appellant, but it contends that as the wires were placed on poles at a height of from twenty-two to twenty-five feet above the surface of the street, it could not reasonably anticipate that plaintiff would climb up and come in contact with them, and that placed as they were, it owed the

plaintiff no duty to insulate or take any other precaution than the evidence shows it did take, citing Brush El. L. & P. Co. v. Lefevre, 93 Tex. 604, 49 L. R. A. 771. That is a case very similar to the case at bar, and were we required to follow the law therein declared the result of this appeal might be different. There is, however, this difference in the evidence: In that case the opinion discloses that no one was ever known to get upon the awning where the deceased was killed, whereas in our case the evidence is that in the city of Carterville a great number of houses are moved along the public streets, and in fact at some time six or seven years ago this particular wire had given trouble to a house mover at this street crossing; and there is in our case the additional fact that only the day before the injury occurred the servants of this defendant helped plaintiff move this house under its trolley wire at a point several blocks distant from the place of the contact.

The case of Winegarner v. Edison El. L. & P. Co. (Kan.), 109 Pac. 778, 28 L. R. A. (N. S.) 677, is directly in point, and in the opinion is found this language: "There is evidence that the company had notice of the moving of this building. Whether it had notice of its passing the particular spot where the accident occurred, or not, is not shown, but there is evidence tending to show that the moving of buildings was of so frequent occurrence that the defendant must have taken notice of such use of the streets." The opinion also holds that it is a matter of common knowledge that wires carrying only a light voltage, like, for instance, a telephone wire, are not liable to produce any injury by contact. We think that is a well reasoned opinion and that it has the approval of the great weight of authority.

The correct rule of law is stated in the case of Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256, as follows: "But it is generally held

that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.'' [See, also, Brush El. L. & P. Co. v. Lefevre, 93 Tex. 604, 49 L. R. A. 771; Wilt v. Coughlin, 176 Mo. App. 275, 161 S. W. 888; Teis v. Smuggler Min. Co., 158 Fed. 260; Brubaker v. Kansas City El. L. Co., 130 Mo. App. 439, 110 S. W. 12.] The rule is also well stated in Cole v. German Sav. & L. Co., 124 Fed. 113.

In our case it is shown that houses are frequently moved along the streets of Carterville, from which it necessarily follows that in doing so they may come in contact with any wires that are in the way and which must therefore be raised or removed. Hence it cannot be declared as a matter of law under such circumstances that the act of the plaintiff was so exceptional and unheard of that a reasonably prudent person exercising the highest degree of care in stringing wires in Carterville would not have anticipated that those engaged in the house moving business would come in contact with them, and the wire in question, strung as it was, was highly dangerous when a contact was made with the telephone wires alongside of it. Besides, on a previous occasion the defendant had trouble with this particular wire coming in contact with the telephone wires when a house was being moved thereunder, and it therefore cannot say the occasion was unheard of and unprecedented. [Harrison v. Electric Co., 195 Mo. 606, 93 S. W. 951; Hoepper v. Southern Hotel Co., 142 Mo. 378, 44 S. W. 257; Day v. Consolidated L. &. P. Co., 136 Mo. App. 274, 278, 117 S. W. 81; Graney v. Railway Co., 140 Mo. l. c. 98, 41 S. W. 246.]

The plaintiff cannot be held guilty of noncontributory negligence as a matter of law for deliberately and voluntarily taking hold of this uninsulated wire for the reason that the evidence shows that it was strung among ten or fifteen similar looking uninsulated telephone wires that were entirely harmless in themselves, and but for the connection made by taking hold of them with this live wire no harm would have resulted. It is not a case of a person knowingly laying hands on an obviously uninsulated wire which he could be held as a matter of law to know or by reasonable prudence would have suspected was charged with dangerous current. It would indeed be strange for the triers of the fact to find that he was guilty of contributory negligence as a matter of fact in attempting to lift what appeared to be harmless telephone wires among which was hidden the one carrying the danger.

Appellant claims that plaintiff's instruction No. 1 put the case to the jury on the humanitarian doctrine. This is without merit because the instruction expressly requires that the jury find as a prerequisite to recovery that the plaintiff was himself free from negligence.

The defendant was not entitled to its refused instruction H because it held plaintiff guilty of contributory negligence unless he wore rubber gloves. Such precaution on his part might have been the safest method of handling the wires, yet it was for the jury to decide whether the way in which he did undertake to lift the wires was such as a reasonably prudent person would have adopted.

The instructions given are in accord with the holdings of this opinion, and those refused advanced the defenses which we have held to be untenable in this case.

The judgment is affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.