STANDARD STEEL CAR CO. v. McGUIRE.

(Circuit Court of Appeals, Third Circuit. May 13, 1908.)

No. 16.

1. MASTER AND SERVANT—SERVANT OF INDEPENDENT CONTRACTOR—INJURIES—METHOD OF WORK.

Where the servants of a contractor for the erection of an addition to defendant's car shops had been accustomed to use the runway of a traveling crane in the mill to move scaffolding from one truss to another, which method of work had been pursued in the presence of defendant's superintendent, without objection, it would be considered as having been followed with defendant's express permission.

2. NEGLIGENCE—CARE REQUIRED.

Where defendant had consented to the use of a crane runway in defendant's mill by plaintiff, a servant of an independent contractor, in moving scaffolding from one truss in an addition to the mill to another, plaintiff in so using the runway was not a trespasser, but was within the class of persons present in dangerous premises by the owner's express permission, as to whom defendant was chargeable with an affirmative duty to take special precautions against injury that might happen to plaintiff by reason of the operation of the crane on that part of the runway on which he was standing.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 20.]

3. SAME—ASSUMED RISK.

Where plaintiff, a servant of an independent contractor, was permitted with defendant's consent to use the runway of a traveling crane in altering the position of scaffolding in defendant's mill, plaintiff did not assume the risk of defendant's negligence in operating the crane on such portion of the runway where plaintiff was standing, without notice to him, though plaintiff was also bound to guard himself against obvious dangers.

[Ed. Note.—Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

4. SAME—ANTICIPATED DANGER.

Where defendant had invited the servants of an independent contractor to use a traveling crane runway in altering the position of scaffolding in the mill, defendant was bound to anticipate the presence of such servants on the runway and to guard against dangers incident thereto.

5. SAME—QUESTIONS FOR JURY.

In an action for injuries to a servant of an independent contractor by being struck by defendant's traveling crane, used with defendant's permission for the removal of scaffolding from one place in the mill to another, whether defendant was negligent in failing to use reasonable precautions to prevent such injury, and whether plaintiff was negligent, held for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, §§ 279-346.]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

W. W. Smith, for plaintiff in error.
L. E. Porter, for defendant in error.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge. The defendant in error, who was plaintiff below and hereafter called the plaintiff, recovered a verdict in an action of trespass for personal injuries claimed to have been caused by the negligence of the plaintiff in error, which was defendant below and hereafter called the defendant. The material facts of the case, as disclosed by the record, are as follows:

Defendant was engaged in the manufacture of steel cars, at Butler, Pa. Plaintiff was an employé of McClintock Marshall Construction Company, an independent contractor engaged in building for the defendant an addition to its shop. The original shop, which was of very large dimensions, was as to its frame at least, constructed of iron, as was also the addition under course of construction, one side of the old shop forming one side of the addition. This side had been so stripped as to leave only the framework of iron, upon the top of the columns of which, iron trusses in sections about 24 feet long by 9 feet deep were being placed, the columns of the old building serving also for that side of the new. These columns were 50 feet in height. The trusses were raised to the top of the column, and temporarily attached, but had to be riveted, which was done by the use of pneumatic tools, the compressed air for which was furnished by the defendant. Against the inside of these columns, on both sides of the shop, were placed runways, which were about 12 inches in width, and on which were tracks carrying trucks at either end of traveling cranes. These runways were 25 or 30 feet from the ground, and as the building was some 1,800 feet in length, there were several of these cranes in use.

The contractor erecting the addition referred to, had two gangs of four men each engaged in riveting the trusses to the tops of the columns, each gang working independently of the other. In the prosecution of their work, it was necessary for the men to stand upon a scaffolding. This scaffolding, which was about the length of the truss, say 24 feet, was constructed with what were called needle beams, or sticks of that length, suspended from the top of the truss by ropes, and upon which the floor of the scaffold was laid. When so suspended, the scaffold was 12 feet or more from the top of the crane runway, which lay directly underneath it and against the columns upon which the work was being done. When the work of fastening one section of the truss was finished, it was necessary to move further on to the adjoining space between two columns, to fasten another. For this purpose, two of the men, during the five days they had been so employed, would drop down onto the crane runway, and the scaffolding sticks were lowered with the ropes by the two men who remained on the bottom strut of the truss. The ropes were then dropped and coiled up by the men on the runway, and carried with the scaffolding sticks

along to the next truss, where the rope was thrown up to the men on the truss, and the scaffolding sticks hoisted into place.

This was not only the obvious and convenient method of proceeding with the work, but no other seemed to have suggested itself, that would not have involved much trouble and great delay in the prosecution of the work in hand, and it was in evidence that defendant's superintendent was on the floor of the mill, from where he could and did observe, without objection, this method of moving the scaffolding. The scaffolding had been so moved several times a day for the five days that this work had been going on. During this time, it happened more than once that the crane moved along the runways at a time when the plaintiff and another workman were walking thereon, while engaged in making one of these movements of the scaffolding. In each case, they were warned of the approach of the crane by several distinct and loud signals from a bell controlled by the crane operator. On the day of the accident, however, while plaintiff, together with his co-employé, was carrying one of these needle beams along the runway from one truss to the other, the crane approached without any signal being given by bell or otherwise, and without warning from any one, and struck and ran over the plaintiff, who had one end of a needle beam on his shoulder, with his back turned from the direction in which the crane was coming. Plaintiff testifies that, after getting down on the runway, before beginning to move the scaffold, he looked up and down the runway to see if it were clear. The crane in question was operated by a boy stationed in a cage hanging from the end of the crane on the opposite side of the mill to that where the plaintiff was working. It was in evidence on the part of defendant, that printed instructions were given to its own workmen not to go upon the crane runways, but no such instructions or other warning in this respect were given to the contractor or to his employés engaged in doing this work for the defendant.

It was also testified, by the boy who operated the crane from the cage hanging below it on the opposite side of the mill, that he had general instructions to look out for the defendant's employés at work upon the floor of the mill below him, but was not instructed to look out for those engaged on the trusses, and who might be on the crane runway; that at the time of the accident he was watching the men on the ground, and not thinking of giving any warning to anybody else. "I wasn't thinking of giving any warning to anybody else but the men on the ground." He also testified that he did not sound the bell at the time of the accident, which on previous occasions had given warning of the approach of the crane to those on the runway. There was testimony tending to show that the work upon which plaintiff was engaged was done in the presence of a superintendent and general manager of defendant, and that the scaffolding had been moved in the manner described about 12 times. It is not in dispute that this use of the crane runway by the men when moving the scaffolding, was known to those in control of defendant's mill, or that no protest or objection on their part was made thereto. There was certainly testimony tending to show acquiescence on the part of the defendant, in this use of the crane runway, for the purpose and in the manner described, and

also that any other method of moving the scaffolding would have been exceedingly inconvenient, if not impracticable. At the conclusion of plaintiff's testimony, defendant moved for a nonsuit, which was refused, and before the case was submitted to the jury, a request for binding instructions was submitted by defendant's counsel, which was also refused.

The principal assignment of error is to the refusal of the court to charge the jury that, under the pleadings and evidence in the case, the verdict must be for the defendant. Several of the other assignments of error may be grouped under this first assignment. We have therefore carefully considered all the evidence in the case and summarized it as above.

We agree with the learned judge of the court below, that the method of moving the scaffolding from one truss to another, had been adopted by the contractors in the necessary discharge of their work, in the presence of the superintendent and by what, under the testimony must be considered the express permission of the corporation itself. We think, therefore, it must clearly appear that the plaintiff, as an employé of the contractor, engaged at defendant's request in constructing the addition to its mill, was not a trespasser upon defendant's premises generally, or upon the crane runway in particular, under the circumstances shown by the evidence; that while at work on the trusses at the tops of the columns, and also in the incidental and temporary use of the crane runway immediately underneath the same, he was in the class of those who are present on dangerous premises, by the express invitation of and for the purposes of their owner, upon whom, on that account, the law imposes a special duty of care to guard the one thus present from the dangers incident to the situation.

In this state of the case, the duty imposed upon the defendant required special precaution against injury that might happen to the plaintiff by reason of the operation of the crane on that part of the runway upon which he might be standing. Upon reasonable precautions to be taken by the defendant in this regard, we think the plaintiff had a right to rely. The more so, perhaps, that there was testimony tending to show that on the three or four previous occasions, the approach of the crane, while those engaged in riveting the trusses happened to be upon the runway, was signaled by a loud sounding bell. While plaintiff was not relieved from the duty of care on his part to guard himself against obvious dangers, he did not assume, as contended by defendant, all the risks of the situation as being incident to his employment, and certainly not the risk of defendant's negligence and want of care.

The court below was therefore clearly right in refusing defendant's point embodied in his third assignment of error, to wit, that defendant was not bound to anticipate the presence of plaintiff on the crane runway at the time of his injury. Having, under its contract for the repair of its mill, invited the plaintiff and others into situations that would be dangerous, if its operations were continued while the repairs were going on, if it decided, under the circumstances, to continue those operations, it was bound to reasonably guard against the dangers

incident thereto, or, in the felicitous language of the learned trial judge:

> "It assumes an obligation that the operations of its mill will be subordinated in a reasonable degree to the operations made necessary on the part of the contractor, in order to perform those repairs."

Whether there was a lack of such care as amounted to negligence on the part of the defendant, was a question properly to be submitted to the jury. This, and the question whether the method adopted for moving the scaffolding, which required that some of the workmen during the process of removal should stand upon the crane runway, was a reasonable discharge of their duty under the premises, or involved contributory negligence on the part of the plaintiff, together with other questions raised by the defendant, were properly submitted to the jury by the learned judge of the court below. The exceptions to specific portions of the charge of the court below, covered by the several assignments of error, have been dealt with in what we have said in our general discussion of the case, and do not require more particular consideration.

The judgment of the court below is affirmed.