## PENNSYLVANIA UTILITIES CO. v. BROOKS.

(Circuit Court of Appeals, Third Circuit.   January 27, 1916.)

No. 1981.

ELECTRICITY ☞19—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

   Plaintiff was an employé of a contractor working on an electric generating plant owned by defendant, and was injured by a current sent through a wire without his knowledge.   The court adopted defendant's theory that it was not liable if the contractor had notice of the defects responsible for the injury, but refused a directed verdict asked for on the ground that plaintiff's foreman knew the current had been permanently turned on.   Plaintiff contended that the foreman was not the contractor's representative, and that to constitute notice to the contractor notice should have been given to P., who was in charge of the whole work.   There was also a controverted question of fact as to the cause of the accident.   There was evidence that plaintiff was ignorant of the dangers of electricity, excepting by contact with the wire, and there was no evidence that defendant notified either P. or the foreman that the current turned on was of a voltage sufficient to create danger by contact with the static zone, or notified them of the danger, or that they independently possessed knowledge thereof.   *Held*, that the motion for a directed verdict was properly denied, as there was a question for the jury, even though S. was told that the current had been turned on.

   [Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. ☞19.]

   In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

   Action by James H. Brooks against the Pennsylvania Utilities Company.   Judgment for plaintiff, and defendant brings error.   Affirmed.

   Edward J. Fox, of Easton, Pa., and Joseph A. Slattery and Robert E. Steedle, both of Philadelphia, Pa., for plaintiff in error.

   T. McKeen Chidsey, Smith, Paff & Laub, and Calvin Smith, all of Easton, Pa., for defendant in error.

   Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

   WOOLLEY, Circuit Judge.   The one error assigned is the refusal of the trial court to direct a verdict for the defendant.

   The defendant (plaintiff in error) owned an electric generating plant. The Atlantic Construction Company was an independent contractor, engaged in enlarging the plant and in installing additional electrical apparatus.   The plaintiff (defendant in error) was an employé of the Construction Company, at work upon the plant by invitation or permission of the defendant.

   Before the completion of the work the defendant renewed the operation of the plant by turning on the current, whereby the plaintiff sustained the injuries of which he complains.

   The additions or improvements consisted of conduits, high tension lines and transformers, the installation of which did not involve contact with or work upon the old apparatus.   The work was of different

kinds, performed by workmen grouped according to the character of the work to be done. The groups or gangs consisted of laborers, carpenters, iron construction men and electrical construction men and their helpers.

Peterson, an officer or employé of the Construction Company, was in charge of the entire work, while Smith was the foreman of the electric construction gang, in which the plaintiff was an electrician's helper. The work was known as "dead" work, that is, it had nothing to do with handling wires or apparatus containing live currents. Whenever tests were to be made by turning on the current, the plaintiff and his co-workers were warned by Smith, their immediate foreman.

Several weeks before the injury to the plaintiff, the defendant, the owner of the property, permanently charged some of the new construction with electric current carrying 33,000 volts, without, as it is claimed, notifying the plaintiff. On the day of his injury, the plaintiff was working at a bench near or beneath a partially insulated high tension wire carrying electricity of this large voltage. He was employed in putting threads on a pipe to be used as a conduit. The pipe was a little less than ten feet in length. Upon removing the pipe from a vise, the plaintiff swung or revolved it in the air, bringing it in contact with or in close proximity to this highly charged wire. The current grounded through his body and caused his injuries.

The defendant admitted that it had permanently turned the current through the wire in contact with or in proximity to which the plaintiff was injured, but for defense, maintained, that that fact, if not known to the plaintiff, was known to Smith, his foreman, and therefore no duty devolved upon it either to warn or protect the plaintiff, who was engaged at work upon its premises, not as its employé but as the employé of the Construction Company, an independent contractor. For this position the defendant relied upon the principle of law cited with approval in the case of Newingham v. Blair, 232 Pa. 511, 81 Atl. 556, that,

"It is the rule that the owner of property owes to an independent contractor and his servants at work thereon, the duty of exercising reasonable care to have the premises in a safe condition for the work, *unless the defects responsible for the injury were known to the contractor.*"

As the court charged the jury precisely as requested by the defendant, the defendant, of course, does not complain of the instructions upon the law, and as the plaintiff has not sued out a writ of error, he, of course, cannot charge error in the law. Therefore, there is neither ground nor occasion, in view of the errors assigned, to inquire or determine whether error was committed in charging the law. We must assume, for the purposes of this case, that the law as prayed by the defendant and as charged by the court was correct, and determine the one question raised by the assignments of error, whether in applying the law to the facts, the court erred in refusing to direct a verdict for the defendant.

The prayer for a directed verdict was made upon the contention that Smith, the foreman of the independent contractor, of whom the plain-

tiff was a servant, knew that the current had been permanently turned on; that knowledge of the foreman was knowledge of the master, and therefore, negligence in failing to warn the plaintiff, if any existed, was that of the plaintiff's master and not of the defendant. This contention was based upon testimony claimed to be undisputed.

It appears by the testimony, with little contradiction, that Smith knew that the current had been permanently turned on, and had told some of his men, though not the plaintiff. Confronted with this testimony, the plaintiff maintained that Smith was not the representative of the independent contractor, being but a boss of one of its several gangs, but that Peterson, who was in charge of the whole work and of all the gangs, was the representative of the contractor, whom the defendant should have notified of the turning on of the current, or whose independent knowledge thereof would have become the knowledge of the master and bound the plaintiff. This was earnestly urged because there was no evidence that Peterson was so notified or independently possessed such knowledge. Upon the issue thus raised was the case largely argued before us. But this was by no means the sole issue upon which the trial judge submitted the case to the jury. In the first place, there was a controverted question of fact as to how the accident occurred, namely, whether in swinging the pipe, the plaintiff brought it in contact with the heavily charged wire, causing the current to ground through his body, or in revolving the pipe he merely projected it into the static zone surrounding the uninsulated high tension wire, without bringing it into contact with the wire, causing the current to jump or arc from the wire to the pipe and ground through his body.

If from this conflict of testimony the jury had found that the plaintiff brought the pipe in contact with the wire, and thereby drew the current through his body, there would have arisen, in addition to a question of contributory negligence, the question of notice by the defendant and knowledge of the latent danger of Smith or Peterson according as the knowledge of one or the other became the knowledge of the Construction Company, the employer of the plaintiff. This is one theory upon which the case might have been decided, but there is another presented by the testimony. This is, that the plaintiff did not bring the pipe in contact with the wire, but in revolving the pipe, brought it within the static zone, and as a consequence the current jumped from the wire to the pipe and flashed through his body. A finding based upon such a theory would open up a wide range of disputes amply supplied by the testimony, in which the principle of law advanced by the defendant and charged by the court would or would not have a bearing, according as the jury found the facts.

Surrounding every wire carrying electric current is a zone charged with electricity. This is known as the static zone, and the electricity with which it is charged is known as static electricity. Static electricity surrounding a wire carrying electricity of high voltage possesses the property of causing the electric current to arc or jump from the wire to an object within its zone, though the object be not in contact with the wire. The higher the voltage of the current in the

line, the more readily will the current jump across an air gap. The length of the arc or the jump depends upon the quantity of static electricity present, as well as upon atmosphere conditions, the tendency to jump being greater when the day is damp, as was the day upon which the plaintiff was injured. The current in the wire may jump through the static zone for a distance of from two to twenty inches.

Of this property or habit of' electricity the defendant had knowledge, for the superintendent of its plant warned certain of the Construction Company's employés of dangers present at the very place in which the plaintiff was at work when injured. Having permanently turned on the current, it was the defendant's duty to inform either the plaintiff, Standard Steel Car Co. v. M'Guire, 161 Fed. 527, 530, 531, 88 C. C. A. 469 (C. C. A. 3d), or the plaintiff's master, of this latent danger, unless, indeed, the plaintiff or his master already knew it.

There was testimony that the plaintiff was familiar with electric appliances and understood and was alive to their dangers. On the other hand, it was testified that the plaintiff worked entirely upon dead work which revealed none of the properties of electricity; that he had never heard of static electricity or static zones; that he was ignorant of the dangers of electricity excepting by contact with electric wires; and that he had not been notified and did not know that the current had been permanently turned on.

While the jury may have found that Smith knew that the current had been permanently turned on and that Peterson did not know it, there is no evidence in the case, so far as we can find, that the defendant notified either Smith or Peterson that the current so permanently turned on was of a' voltage to create danger by contact with its static· zone, or that the defendant notified either Smith or Peterson of the danger of a static zone, or that Smith or Peterson independently possessed knowledge of such a danger, which, under the rule of law became the knowledge of the Construction Company and bound the plaintiff. The question, therefore, was, not whether Smith or Peterson (whichever may have been the vice-principal of the Construction Company) knew that at the time of the accident the current had been permanently turned on, but whether Smith or Peterson knew what the defendant knew·of the presence and danger of a static zone surrounding a high tension current at the place at which the plaintiff was working, and by such knowledge, as the employer of the plaintiff, relieved the defendant of its duty to supply the plaintiff with a reasonably safe place in which to work and to protect him from latent dangers by reasonable precautions and timely warnings. This was one of the questions which the court left to the jury, based upon evidence which, if not conclusive against the defendant, was certainly open to dispute.

The learned trial judge said in his charge:

"From the evidence in the case it appears that this static zone which exists about electric wires, may cause a disruptive charge of electricity and cause injury to a person who either 'comes himself, or causes something which he has in his hands or in his possession to come within that static zone. As I recall the testimony, *there is no evidence that any warning was given to anybody of that static zone,* and *it is for the jury to determine* as to whether

the *presence of that static zone*, assuming that he had knowledge that the current was turned on at that time, was not known as well to the employers of the plaintiff as it was to the defendant. If the employers (the Construction Company) *knew of the presence of the static zone* and knew that the current was turned on at that time, it was their duty to warn him of that condition, and if the injury came from the lack of warning on their part, then the plaintiff could not recover."

Whether the defendant warned the plaintiff or his master of the presence and danger of a static zone, whether the master, through its vice-principals possessed such knowledge because of opportunities equal to those of the defendant to learn of such a zone, and whether, therefore, the negligence which caused the plaintiff's injuries, was the negligence of the master or the defendant, were all questions for the jury.

In Dunn v. Cavanaugh, 185 Fed. 451, 107 C. C. A. 521, the plaintiff's decedent was warned not to touch or *go near* certain electric wires. He was not told of the existence or the danger of a static current by which he might be injured without touching the wires. There was no evidence that he knew of it. He entered the static zone, and a flame leaped from the wire and killed him. The defendant assigned for error, that in view of the warning, the court should have directed a verdict for the defendants. The court said:

"But we think the judge was quite right in leaving it to the jury to say whether the warnings would not be understood by an ordinarily prudent person as referring to actual contact with the wires, and whether they were of such character as to advise him of the danger which actually caused his death.

"The defendants further contend that a verdict should have been directed in their favor, because the decedent was guilty of contributory negligence as a matter of law in lowering the boatswain's chair so as to get opposite instead of being above the wire. This question we think was properly submitted to the jury, because if all the decedent had to apprehend was the danger of touching the wires he could not be said to be guilty of contributory negligence in getting opposite one, at least as a matter of law.

"The defendants further contend that the verdict should have been directed in their favor, because decedent assumed the risk of the injury which he sustained. He assumed all risks he knew or ought to have known to exist. But it was for the jury to say whether he did know or ought to have known of this particular danger. It certainly would be obvious to very few persons not experts or engaged in business involving electrical currents of high tension."

The question before us is not whether the court erred in its instructions upon the law. The question is whether it erred in refusing to direct a verdict for the defendant by applying the law to testimony which the defendant conceived to be undisputed. Upon both phases of the case the trial court thought there was conflict in the testimony. Certainly upon one phase, open for the jury to adopt, there was a clear conflict which required the trial court to submit the case to the jury. The testimony upon either theory of the case is ample to support the verdict rendered.

The judgment below is affirmed.