## SUNDAY CREEK CO. v. GRAY.

(Circuit Court of Appeals, Fourth Circuit. November 9, 1916.)

No. 1445.

1. EVIDENCE ⬅571(9)—EXPERT TESTIMONY—WEIGHT—INJURIES TO SERVANT —CAUSE OF ACCIDENT.

Testimony of plaintiff's witnesses that they were positive that plaintiff's intestate, a miner, was killed by coming in contact with a return electric wire is sufficient to warrant a finding to that effect, notwithstanding testimony by experts that they had never known a return wire to become hot enough to effect electrocution.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2395; Dec. Dig. ⬅571(9).]

2. MASTER AND SERVANT ⬅107(3)—INJURIES TO SERVANT—DUTY OF MASTER— SAFE PLACE TO WORK.

The master is bound to furnish a reasonably safe place to work, and where the duty is hazardous the master is liable, not for the danger to

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

which the servant is necessarily exposed, but for negligence in failing to make reasonable provision for the servant's safety.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 201, 255; Dec. Dig. ☞107(3).]

3. MASTER AND SERVANT ☞226(1)—INJURIES TO SERVANT—ASSUMPTION OF RISK—NEGLIGENCE OF MASTER.

A servant assumes the ordinary risks incident to his employment, but does not assume the risk of his master's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 659, 660; Dec. Dig. ☞226(1).]

4. MASTER AND SERVANT ☞265(13)—INJURIES TO SERVANT—ASSUMPTION OF RISK—BURDEN OF PROOF.

On the issue of assumption of risk, the burden of proof is on the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 892, 907; Dec. Dig. ☞265(13).]

5. MASTER AND SERVANT ☞119—INJURIES TO SERVANT—DUTY OF MASTER— USE OF ELECTRICITY.

Where the master employs electricity in his operations, he must exercise an extreme degree of care for the servant's safety.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 210; Dec. Dig. ☞119.]

6. MASTER AND SERVANT ☞288(5)—INJURIES TO SERVANT—EVIDENCE—ASSUMPTION OF RISK.

Where there was no evidence that the servant knew that a wire was charged with electricity, and there was evidence that the wire was permitted to sag down over the car in which the servant was riding, it cannot be said as a matter of law that he assumed the risk of injury therefrom.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1077; Dec. Dig. ☞288(5).]

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller and John C. Rose, Judges.

Action by Basil Gray, administrator of the estate of Paul Jackson, deceased, against the Sunday Creek Company. Judgment for plaintiff, and defendant brings error. Affirmed.

George S. Couch and Brown, Jackson & Knight, all of Charleston, W. Va., for plaintiff in error.

J. Howard Hundley, of Charleston, W. Va., for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and JOHNSON, District Judge.

KNAPP, Circuit Judge. The administrator of Paul Jackson, an employé of Sunday Creek Company, plaintiff in error, brought suit against it, under a West Virginia statute, for negligently causing the death of his intestate, and recovered a judgment which this writ of error seeks to reverse. Jackson was a coal loader in one of the company's mines, and had been so employed for eight or nine months. The place where he worked on the day of the accident was a mile or

so from the mine entrance. At quitting time he, with several others, boarded an empty coal car, drawn by a mule, for the purpose of leaving the mine. This appears to have been the customary way of taking the men to and from their work. When the car reached the point where they got off, and while Jackson was in the act of getting off, his head came in contact with an overhanging electric wire, and he received a shock which killed him almost instantly. This point was at the inner end of a slight curve, about 150 feet from the drift mouth of the mine, and was unlighted at the time. A statement in the amended declaration, which seems to be undisputed, except by the formal plea of "not guilty," is as follows:

"Decedent had a right to assume that the electric power in said mine was off, because it was after working hours, the electric lights were off, and it was the known custom in said mine to turn off the electric power at quitting time, when the motors had stopped running, and before permitting the mule cars, in which employés came from their work, to be driven out and along the motor road."

The wire which is claimed to have caused the death of Jackson was the "return" wire, so called, which came into the entry, where the cars ran, at about the point where the accident happened, and was carried along on insulators near the top of the entry and on the left-hand side going into the mine. The wire itself was not insulated, and defendant asserts, for reasons stated, that insulation was impracticable. The entry was about 15 feet wide, but a trifle less than 5½ feet in height.

[1] There was sharp conflict of testimony upon two points. Witnesses for plaintiff were positive that Jackson was killed by coming in contact with the "return" wire, and they described an experiment, made directly after the accident, which showed it to be heavily charged with electricity, while the trolley wire was found to be without power. Against this was the evidence of defendant's experts, to the effect, in substance, that they had never known or heard of a return wire becoming "hot" enough to effect electrocution. Without enlarging upon this dispute, it seems evident that the jury were warranted in finding that Jackson's death was caused by hitting the return wire in question when it was in a highly charged condition.

The other dispute related to the location of the return wire in the entry, and its actual position at the time and place of the accident. Two of plaintiff's witnesses testified that this wire was about 2 feet from the side or "rib" of the entry; and a third witness confirmed their further statement that it was "sagging down," or "bagged," at that point about 15 or 18 inches, and hung over the right side of the top of the car in which Jackson was riding. On the other hand, the evidence of defendant showed that the wire in question was stretched "tight" along the entry about 6 or 8 inches from the left rib and close to the roof, that it did not "sag" at the place where Jackson met his death, and that it remained in the same position after the accident, without alteration or repairs, until the mine was abandoned. Upon this proof was rested the principal defense at the trial, which is the only ground now urged for reversal, namely, the assumption of risk by the employé.

[2-4] The doctrine of assumption of risk is so clearly recognized in the law of negligence as not to require discussion in this case. The master is bound to furnish a reasonably safe place for the servant to work; the servant takes the ordinary risks incident to his employment. If the work be of hazardous nature, the master is liable, not for the danger to which the servant is necessarily exposed, but for negligence in failing to make reasonable provision for the servant's safety. The servant does not assume the risk of the master's negligence, and upon the issue of assumption of risk the burden of proof is upon the defendant.

[5] In the application of these rules account must be taken, as all authorities agree, of the nature of the work in which the servant is engaged and of the appliances provided for its prosecution. Where operations are carried on with the aid of electricity there is an ever-present element of danger which the servant may not appreciate, and in such case it becomes the duty of the master to exercise an extreme degree of care for the servant's security. Indeed, the modern doctrine seems to go to the extent of charging the master with negligence if electric wires with which the servant is liable to come in contact are not insulated or otherwise properly protected. For example, in Ellsworth v. Metheney, 104 Fed. 119, 44 C. C. A. 484, 51 L. R. A. 389, the syllabus reads as follows:

"Where the miners in a coal mine, with the knowledge and implied consent of the owner, are accustomed to use the passages or entries in the mine as a place for congregating or passing to and fro during the hours of recreation, it is negligence in the owner to introduce and extend along such an entry an electric wire which is dangerous to the life of those who come in contact therewith, without properly insulating or inclosing the same, or giving notice of the danger to those who, he should reasonably apprehend, are likely to be brought in contact with it, and such negligence will render him liable for the death of a miner, who, in the accustomed use of the premises, and without knowledge of the danger or negligence on his * * * part, is killed by coming in contact with such wire."

In 15 Cyc. 473, it is said:

"The exercise of a sufficient degree of care requires a careful and proper insulation of all wires and appliances in places where there is a likelihood or reasonable probability of human contact therewith, and such reasonable and thorough inspection as will preserve such insulation from impairment or detect any defects when occurring."

And again, 26 Cyc. 1120:

"Where a master employs electricity in his business, he must exercise every reasonable precaution known to those possessed of the knowledge requisite for the safe treatment of electricity to protect his servants from injury, and must see to it that his poles and other places for work are in a reasonably safe condition."

To the same effect are several decisions of the Supreme Court of Appeals of West Virgina, the state in which this action arose. Among the latest of these is Humphreys v. Raleigh, C. & C. Co., 73 W. Va. 495, 80 S. E. 803, L. R. A. 1916C, 1270, a case of marked similarity to the one at bar, in which the subject is quite fully discussed. The following is quoted from the opinion:

"Authorities cited abundantly show the user of electricity must provide against all probable contingencies and every possibility that can be readily foreseen or anticipated. If he knows any person is liable, in any way or for any reason, whether on a mission or enterprise of business or pleasure, to come in contact with a heavily charged electric wire he is using, he must insulate it, unless insulation is impossible by reason of incompatibility with the use to which it is devoted."

See, also, Penn. Utilities Co. v. Brooks, 229 Fed. 93, 143 C. C. A. 369.

[6] Reading the testimony in this case in the light of these repeated rulings, it seems clear to us that the trial court rightly refused to direct a verdict for the defendant. There is no evidence that Jackson knew or ought to have known of the presence of the wire in question at the place in the entry where he was killed; and, if the wire was then in the position described by plaintiff's witnesses, it certainly cannot be said as matter of law that he assumed the risk to which he was exposed.

Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes