O. H. LAUDWIG v. CENTRAL MISSOURI POWER & LIGHT COMPANY, Appellant.—24 S. W. (2d) 625.

Court en Banc, February 4, 1930.

*Higbee & Mills* for appellant; *E. B. Hamilton* of counsel.

*John M. Campbell* and *M. D. Campbell* for respondent.

DAVIS, C.—This is an action for damages for personal injuries. The basis of recovery is that defendant's wire negligently was permitted to be and to remain uninsulated, whereby electricity escaped therefrom and struck plaintiff, who was then on the roof of a house, which he was engaged in moving, and distant from the wire from five to eight feet. The jury returned, in favor of plaintiff, a verdict for $15,000, and defendant appealed from the judgment entered thereon.

The evidence adduced on the part of plaintiff warrants the finding that defendant, on May 21, 1925, owned an electrical plant and maintained wires strung on poles in and near the city of Kirksville, which carried electrical current. The poles and wires, used in transmitting current to La Plata, followed the east fence bounding State Highway No. 7. At the place where plaintiff was injured the cross-arms on the poles carried porcelain insulators, to which the wires were fastened. The cross-arms were approximately twenty-five feet above the ground. However, the wires carrying the electricity sagged to an altitude of about twenty-three feet. At street crossings and over highways the cross-arms were thirty-five to forty feet in height. At the place of injury, a gate was erected to permit access to the field.

Plaintiff was engaged in the business of moving houses. On May 21, 1925, he was engaged in moving a house, which was placed on a truck, and the altitude of the house and the truck together was twenty and one-half feet above the ground. We infer that the house was about fifteen feet in width, as about fifteen feet of the fence had been taken down to permit access to an intended site in the field. The house was constructed in the shape of an L, and what may be called the L portion projected through the opening in the fence eight to twelve feet east into the field. Also erected along the east boundary fence were poles, east of the light poles, carrying telephone wires, about fifteen feet in height. The telephone wires, it seems, impeded the progress of the house into the field by catching on the east end of the L. To obviate the difficulty, plaintiff climbed to the roof and sat astride the ridge, a foot and a half to two feet from the east end of the L. With help from the ground, plaintiff raised a telephone wire by means of a rope, so that it rested on the roof. It was also his purpose to raise the two other wires by the same method. Plaintiff, when he was struck, was from five to ten feet distant from the nearest uninsulated wire, which carried

13,200 volts. Plaintiff wore a hat, the sweat band of which was damp. While plaintiff was letting down the rope for use in pulling up the telephone wires, a witness testified that he saw a streak of electricity leave the electric wire and evolve into a ball of fire as big as a hen egg and strike plaintiff, whereupon he fell to the ground from the roof. After the occurrence plaintiff's hat was found to have two holes burned into it, about the size of a lead pencil, but it had no other burns on it. The holes in the hat were found on each side, just over the places where it rested above the ears. In addition thereto, two burns appeared on plaintiff's head, just above the ears, in juxtaposition to the holes in the hat.

The house was raised west of the highway and was to be placed on a site to the east. At the time of the injury it had been moved along the highway about a block, estimated at from two hundred to four hundred feet. Plaintiff knew that defendant maintained high tension wires at the place mentioned, and that it was dangerous to touch any of them. The engineer, in charge of the traction engine pulling the truck on which the house was being conveyed, said he heard a snap and was then stunned by the electric current.

Plaintiff's evidence further warrants the finding that, after plaintiff's injuries but before the house was moved from its position, defendant's line superintendent, who for a number of years had been in its service, visited the scene of the occurrence and examined the situation, including the hat, and there, in the presence of several people, called attention to the two holes in the hat, stating that that was what caused it, and that he had known electrical current to jump six to eight feet. Moreover, defendant's manager stated on two separate occasions that he had known electrical current to arc or jump a distance of six to eight feet, although this statement was denied by him when he took the stand.

Defendant's evidence tends to show by a number of expert witnesses, to-wit, electrical and practical engineers, that it was impossible for electricity to jump or arc over sixty-three hundredths of an inch, even under the most favorable circumstances, and that it could not jump or arc a space of five feet without contact. It further tended to show that no known or practical method obtained whereby wires, carrying 13,200 volts of electricity, could be insulated to afford protection to a person or object having contact therewith.

Defendant's evidence further tended to show that plaintiff's head or hat touched the high tension wire.

Other pertinent facts will appear in the course of the opinion.

The petition avers that plaintiff, while engaged in moving a house along and across a state highway, at a point about a half mile south of the city of Kirksville, was struck and injured as the result of

dangerous and deadly electrical current escaping from a wire, owned and operated by defendant and over which it transmitted the current, which defendant negligently permitted to be and to remain uninsulated. The answer contains, first, a general denial; second, a plea that plaintiff was negligent, in that he attempted to move a house under a transmission wire which he knew was dangerous, and in that he came in contact with said wires.

I. The defendant demurred to the petition on the ground that it fails to state a cause of action. The court overruled the demurrer and defendant assigns error. Several theories are advanced to support the contention.

(a) Defendant's first contention charges that the petition contains no averment of a duty to plaintiff on defendant's part to insulate its wires. The petition avers that plaintiff was moving a house along and across a public highway along and over which defendant's wire was suspended, and that defendant negligently permitted the wire to be and to remain uninsulated. The petition impliedly alleges, at least, that plaintiff was in the exercise of a lawful occupation in a place where he had a legal right to be. Under these circumstances the defendant owed him the duty of protection by insulating the wires. [20 C. J. 355; 9 R. C. L. p. 1210, sec. 20.]

The next specification charges that "the petition ignores the fact that the wires were insulated by being elevated to a height where defendant had no reason to anticipate or expect any one would come in contact therewith." The petition avers that plaintiff was on the roof of the house being moved. It is common knowledge that houses are occasionally, at least, moved along and across highways in this State. From the recitals of the petition it may then be inferred that defendant could anticipate and expect lawful users of the highway to come into close proximity to its wires.

The last specification of the first point asserts that it is contrary to well known physical and scientific facts that electrical current can jump five to eight feet. By this specification we are asked to take judicial notice of a matter which appears, we think, to be at least a debatable fact. It is said that little is known of the nature of electricity; that it is seen only through the results accomplished by it, and that it remains as much of a mystery as ever. The cases of Dunn v. Cavanaugh, 185 Fed. 451, Pennsylvania Utilities Co. v. Brooks, 229 Fed. 93, and Hoppe v. Winona, 113 Minn. 252, 129 N. W. 577, 33 L. R. A. (N. S.) 449, Ann. Cas. 1912A, 247, recognize that a static zone is created around an uninsulated wire, and that uninsulated

wires throw off at times a "brush" or "disruptive discharge" of electricity sufficient to cause an injury to or the death of a person in close proximity thereto, without actual contact with the wire. We cannot judicially notice that it is impossible for electricity to jump or arc through the air without actual contact a space of five to eight feet. The courts are reluctant to declare alleged facts to be manifestly impossible and untrue. [Schupback v. Meshevsky, 300 S. W. 465.]

(b) Section 10737 et seq., Revised Statutes 1919, provide that, before any one shall move a house along or across a public highway, a permit to move it shall be obtained from the county clerk and the application shall definitely state whether it is necessary to remove, raise or interfere with certain. wires, and, if so, that certain notices shall be given. It is said that the petition is demurrable, because it fails to allege that plaintiff obtained a permit to move the house, resulting that the petition develops that plaintiff was a law-violator and a trespasser. Such an allegation was not an element of plaintiff's cause of action. If plaintiff was a trespasser and defendant owed him no duty of protection, that was an affirmative defense to be pleaded by defendant. It is in its nature akin to a plea of contributory negligence. We think the demurrer to the petition was properly overruled.

II. It is argued that the trial court erred in overruling defendant's demurrer to the evidence at the close of the case. Various reasons are assigned.

(a) It is contended that plaintiff was a trespasser and a law violator, and that defendant owed him no duty, because plaintiff failed to comply with the provisions of Sections 10737 to 10743, inclusive, Revised Statutes 1919. These sections provide, in substance, that before any person shall move, outside of certain cities, a house along or across a public highway, a permit to move it shall be obtained from the county clerk, and the application shall state definitely whether it will be necessary to cut, remove, raise or in any way interfere with any electric transmission lines or electric wires, or the feed or trolley wires of any interurban railroad, or move any pole bearing any such wires, or whether it will be necessary to cross the tracks of any steam or interurban railroad, and the owners notified, and, if it shall appear from the application that any of these things are necessary, requisite notice shall be given the owners, upon whom certain duties are imposed.

The evidence discloses that defendant admitted that plaintiff was not a trespasser. Moreover, the evidence is silent with respect to plaintiff's obtention of a permit, for it fails to disclose whether or

not he obtained one from the county clerk. The evidence is also silent and devoid of evidence as to any notice given to defendant or the telephone company with respect to their wires, or as to the presence there of a representative or employee of defendant prior to or at the time of the accident. In view of the admission of defendant that plaintiff was not a trespasser and the silence of the record as to whether or not plaintiff procured a permit, there is no fact or inference before us tending to show that plaintiff did not have a permit. A presumption obtains that one has complied with the law. If he has not, it is the duty of one relying upon the fact to plead and prove it. As defendant was remiss in both regards and as plaintiff's evidence does not disclose the facts upon which defendant relies, we are not authorized to consider the point.

However, even though it be conceded that plaintiff was a trespasser and was violating the law by failing to obtain a permit to move the house, there was no causal connection between his failure to obtain a permit and the cause of his injuries. It is doubtful that the statutes named include telephone companies, as they refer to electric wires only. Be that as it may, it was unnecessary to cut the telephone wires to move the house thereunder, and it is probable that, had not the plaintiff been on the roof, a telephone company employee would have been there lifting its wires in the same manner. [Stack v. Baking Co., 283 Mo. 396, l. c. 417, 223 S. W. 89; Blackburn v. Southwest Mo. R. Co., 167 S. W. 457.] Even if the evidence showed that plaintiff did not have a permit, it would not demonstrate that the injury would or could have been prevented. It would go no further than demonstrating that, if plaintiff had not been on the roof, he would not have been injured. [Rittenhouse v. Railway Co., 299 Mo. 199, 252 S. W. 945.]

(b) It is next said that defendant was charged with no duty to insulate its wire in question, first, because the height of the wire from twenty-three to twenty-five feet was tantamount to isolation and insulation; second, because defendant was not required to anticipate the presence of a person on the roof of a house as it was being moved under its wire; third, because all the evidence shows that its high voltage wires could not be insulated; and, fourth, because the record is devoid of evidence tending to show that insulation would have protected plaintiff.

The evidence develops the scene of the accident as suburban to the city of Kirksville. With the evidence before us that houses had been moved, prior to the injury to plaintiff, from place to place in Kirksville and vicinity, as well as our common knowledge that houses are moved from site to site, defendant was bound to know that houses were likely to be moved from time to time along and across the public highway under its wires and it was charged with

the duty of protection to the public accordingly. Thus precaution should have been taken for the safety of those thus using the highway. It is evident that the height of the wire at the place in question was not tantamount to isolation or insulation, for defendant could reasonably have expected and anticipated that houses would be moved under its wires and that persons in so moving them were likely to climb to the roofs thereof for some purpose connected with the moving, even though it did not anticipate the actual occurrence. [Hoppe v. Winona, 113 Minn. 252, 129 N. W. 577, 33 L. R. A. (N. S.) 449, Ann. Cas. 1912A, 247; Blackburn v. Southwest Mo. R. Co., 167 S. W. 457.]

Since the jury so found, it must be conceded that the wire, as it was strung, was dangerous to those using the highway as plaintiff used it. Whether it was practical or possible for defendant to insulate the wire is of no moment, and defendant is responsible notwithstanding. We adopt the reasoning found in Hoppe v. Winona, supra, 1. c. 257, as pertinent, reading: "Defendant had no vested right in the use of the bridge for that purpose, and, though granted by the city council, the right should have been exercised with due regard to the safety of those engaged in the vicinity of the wires, and, if their safety could not be provided for, and probable injury guarded against by reasonable precautions, the right should not have been exercised at all, and other methods of transmitting the electricity to Winona adopted and resorted to."

.The argument that the record is devoid of evidence tending to show that insulation would have protected plaintiff is without substantial force. It is negligence to maintain a high voltage wire, capable of causing injury or death, along a public highway, where users are likely to come within its danger, without insulating it. If defendant could not maintain it without danger to persons as developed, it should not have constructed its lines, or it should have provided other methods of transmitting its current. The failure to insulate wires carrying electrical current dangerous to life is negligence. [9 R. C. L. p. 1210, sec. 20; 20 C. J. 355.]

(c) It is urged that the petition does not charge, nor does the evidence show, that the transmission line was not lawfully constructed and located. It is evident from what we have previously said that the failure to insulate the wire was negligence, notwithstanding the transmission line was lawfully located and properly constructed in other respects. If defendant could not have provided for the safety of persons using the highway, it should have adopted other methods of transmitting its current.

(d) It is said that courts should take judicial notice that it is physically impossible for electrical current to jump or arc from five

to eight feet through atmosphere without material contact, on the ground that the phenomena is opposed to common knowledge. We are unable to concede the contention. A witness for plaintiff testified that he saw a streak of electricity leave defendant's wire, followed by a ball of fire, the size of a hen egg, and strike plaintiff. This was direct as well as sworn testimony of an occurrence. As is said in 10 Ruling Case Law, pages 1008, 1009: "It requires an extraordinary case to authorize the court to regard sworn testimony as manifestly impossible and untrue." [Schupback v. Meshevsky, 300 S. W. 465.] It is also said that the testimony is contrary to the well known physical and scientific fact, but as electricity remains a mystery and very little is known of its nature, we are unable to judicially notice either physically or scientifically that electricity will not jump a space of from five to eight feet through the air without material contact. In the cases of Dunn v. Cavanaugh, 185 Fed. 451, Pennsylvania Utilities Co. v. Brooks, 229 Fed. 93, and Hoppe v. Winona, 113 Minn. 252, 129 N. W. 577, 33 L. R. A. (N. S.) 449, Ann. Cas. 1912A, 247, although the impossibility of electricity jumping was not raised, verdicts were upheld predicated on findings that electricity jumped through air from eighteen inches to three feet, as we read the evidence in the cases. It appears from the evidence in those cases that an uninsulated wire, carrying a current of high voltage, creates around it another static electric current or static zone of uncertain diameter, varying according to the tension of the current in the wire or atmospheric conditions, which throw off a "brush" or "disruptive discharge," which will shock any one who gets within it, even without touching the wire. As the testimony in the instant case develops that the electricity did jump a space of from five to eight feet through the air, we cannot say that the testimony was impossible or untrue or that it is opposed to physical or scientific facts.

(e) It is said that plaintiff was guilty of contributory negligence in voluntarily placing himself in close proximity thereto, when he knew the wires of defendant carried high-voltage electrical current. Plaintiff's evidence tends to show, through the admissions of defendant's employees, that it knew that the electrical current was liable to jump. Plaintiff testified that he was unaware that electrical current could jump from a high-tension wire. Contributory negligence exists as a matter of law only in those cases where the acts manifestly show such want of reasonable care on plaintiff's part as to impel a fair and reasonable mind to say that he did not exercise the caution for his own safety which marks the conduct of ordinarily prudent men. Plaintiff's conduct was not such as to charge him with negligence

as a matter of law. [Toney v. Interstate Power Co., 163 N. W. 394; Blackburn v. Southwest Mo. R. Co., 167 S. W. 457; Dunn v. Cavanaugh, 185 Fed. 451; Pennsylvania Utilities Co. v. Brooks, 229 Fed. 93; Hoppe v. Winona, 113 Minn. 252, 129 N. W. 577, 33 L. R. A. (N. S.) 449, Ann. Cas. 1912A, 247.]

We think the trial court properly refused and overruled the demurrers to the evidence requested by defendant.

III. The trial court permitted plaintiff and his wife to testify, over objection, that defendant's manager said to them that he had known electrical current to jump from six to eight feet. The evidence tended to show that he made the statement at defendant's home on a visit there, in conjunction with defendant's physician, to obtain from plaintiff a written statement as to how the accident occurred. It was within the scope of the manager's powers to ascertain the facts regarding the accident to plaintiff, and he was about that duty at the time he made the statement. However, to the manager was committed a particular line of the business, that of the management of the plant of defendant, as we may infer. In other words, his status was that of the *alter ego* of defendant. As such he was a general agent, representing his principal continuously and it was not necessary for the admission of such declaration that it either should have been a part of the *res gestae* or specially authorized. The court did not err in admitting this testimony, for it was within the scope of the manager's general powers to make the admission. [Phillips v. Railroad, 211 Mo. 419, 111 S. W. 109; Minea v. Cooperage Co., 179 Mo. App. 705, 162 S. W. 741.]

IV. Defendant complains of plaintiff's principal instruction, on the ground that it assumes that defendant could and that it was its duty to insulate its wires at the place in question, when insulation was not possible. As we have previously said, defendant could readily have anticipated the presence of some person coming in proximity to its wires while moving a house, and it was consequently its duty either to use every reasonable precaution with regard to the insulation of its wires at the place of the injury, or to provide other methods of transmitting its current. The failure to insulate its wires at the place in question was negligence. [Hickman v. Union Elec. L. & P. Co., 226 S. W. 570; Geismann v. Missouri-Edison Electric Co., 173 Mo. 654, 73 S. W. 654; Hoppe v. Winona, 113 Minn. 252, 129 N. W. 577, 33 L. R. A. (N. S.) 449, Ann. Cas. 1912A, 247; Shannon v. Light & Power Co., 315 Mo. 1136, 287 S. W. 1031.]

It is again said that defendant neither had notice or knowledge that plaintiff was engaged in moving a house under its wires, resulting that such facts develop the non-liability of defendant. However, defendant admitted that it had not insulated its wires, and, as it is charged with anticipating the moving of houses under its wires, it impliedly was charged with notice and knowledge of the moving of the house at the place in question by plaintiff. We have heretofore disposed of the question relative to whether or not plaintiff obtained a permit from the circuit clerk. As the evidence is silent with respect to the obtention of a permit, it was unnecessary, under any issue in the case, to include the finding in the instruction.

V. It is asserted that the instruction given to the jury by the court of its own motion is erroneous, because it is unintelligible and misleading. The instruction tells the jury, in substance, that the testimony as to what the manager said regarding electric current jumping was admitted to show notice to or knowledge by defendant of the fact, if they found it a fact from other evidence in the case, that electric current carried by defendant's wire was likely to or might jump from the wire and injure persons coming close to it; therefore, if they found that the manager did make such statement, they could not consider such statement as evidence showing or tending to show that electric current jumped in this case.

As we have heretofore determined, the testimony referred to in the instruction was admissible for the purpose indicated, that is, to show notice to or knowledge on defendant's part that electrical current was likely to or might jump from its wires. The instruction was not prejudicial or erroneous.

VI. Defendant contends that the verdict of the jury is contrary to three instructions given at its request. Each of the instructions given was predicated on a finding of fact which was debatable. As plaintiff's evidence made a submissible case and as defendant's theories of defense, as developed by the aforesaid instructions, were found by the jury, on the issues thus raised, to be untenable, it results that we are bound by the findings of the jury in that regard.

The judgment is affirmed. *Henwood, C.,* concurs; *Cooley, C.,* not sitting.

PER CURIAM:—This cause coming into Court en Banc, the foregoing opinion of DAVIS, C., heretofore filed in Division Two, is adopted as the decision of the court. *Blair, Frank* and *White, JJ.,* concur; *Ragland, C. J.,* and *Atwood* and *Gantt, JJ.,* concur in the result only; *Walker, J.,* dissents.